402 F.2d 94
 Lee J. ESPLIN, K. C. Weaver, Leo Reeve, Arthur Barlocker and Doyle Sampson, Appellants,
v.
Leland (Lee) HIRSCHI and Laverne Hirschi, Appellees.
William A. BARLOCKER, Appellant,
v.
Leland (Lee) HIRSCHI and Laverne Hirschi, Appellees.
Leland (Lee) HIRSCHI and Laverne Hirschi, Cross-Appellants,
v.
Lee J. ESPLIN, K. C. Weaver, Leo Reeve, Arthur Barlocker, Doyle Sampson and William A. Barlocker, Cross-Appellees.
 No. 9718.
 No. 9719.
 No. 9800.
 United States Court of Appeals Tenth Circuit.
 September 30, 1968.
 Rehearing Denied in Nos. 9718, 9800 Denied November 6, 1968.
 Certiorari Denied March 24, 1969.
 
 See 89 S.Ct. 1194.
 Hardin A. Whitney, Jr., of Moyle & Moyle, Salt Lake City, Utah, for appellants and cross appellees.
 Adam M. Duncan, Salt Lake City, Utah (Parker M. Nielson, Salt Lake City, Utah, on the brief), for appellees and cross appellants.
 Before PHILLIPS, HILL and HICKEY, Circuit Judges.
 HILL, Circuit Judge.
 
 
 1
 This action was commenced by Leland and Laverne Hirschi, appellees and cross-appellants here, individually and as a class action, against B & E Securities, Inc., William A. Barlocker, Lee J. Esplin, K. C. Weaver, Leo Reeve, Arthur Barlocker and Doyle Sampson.[1] The complaint alleged (1) a violation of 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j; and Rule 10(b)-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, and (2) a violation of the Investment Company Act of 1940, 15 U.S.C. § 80a-1 et seq.
 
 
 2
 Early in the litigation the trial judge determined the case was not a class action under Rule 23, F.R.Civ.P., as Amended, and dismissed that part of the complaint pertaining thereto.[2] The case proceeded to trial with the Hirschis as individual plaintiffs and was submitted to a jury upon special interrogatories pursuant to Rule 49(a), F.R.Civ.P. Based upon the answers of the jury to the submitted interrogatories the trial judge found all of the defendants guilty of the alleged violation of the Securities Exchange Act of 1934 and liable in damages to the Hirschis in the amount of $15,600. The defendants were also found to have violated the Investment Company Act of 1940 but the court determined that the cause of action under the Act was barred by the statute of limitations.
 
 
 3
 In addition to the appeal by the individual defendants from the part of the judgment awarding damages, the Hirschis have cross-appealed from the dismissal of the class action and the denial of their cause of action under the Investment Company Act.
 
 
 4
 The defendant, B & E Securities, Inc., is a Utah corporation formed early in 1961 for the original purpose of receiving and holding certain assets owned by the Bank of St. George, the disposal of which had been directed by the bank examiners. The incorporators and original directors of B & E were defendants, William A. Barlocker, Lee Esplin, K. C. Weaver, Leo Reeve and Arthur Barlocker. William Barlocker originally and at all times owned over fifty per cent of the voting stock of B & E. The defendant, Doyle Sampson, was an employee and agent of B & E.
 
 
 5
 Early in the life of the corporation it was determined that the purposes of the corporation should be expanded to include investment in certain real estate, insurance companies, and a motel corporation. To achieve these expanded purposes the Board of Directors undertook to sell stock in B & E to the public. Accordingly, steps were taken to provide for five hundred thousand shares of common stock, one hundred thousand shares of Class A preferred stock, three hundred thousand shares of Class B preferred stock and one million shares of Class C preferred stock. All the stock was to have a par value of $1.00 per share.
 
 
 6
 Sometime during September and again in November of 1961, the plaintiffs, Hirschis, were approached by defendant Sampson who told them among other things, that the investment potential of B & E was good and solicited their investment in the capital stock of the company. Pursuant to this solicitation the Hirschis purchased shares of stock in B & E to the extent of $20,800.00.[3] The Hirschis received a total of $2,500.00 in dividends on this stock; $500.00 in 1961, $1,000.00 in 1962, and $1,000.00 in 1963. B & E, Inc., was apparently at no time a profitable corporation and its assets became quite heavily encumbered.
 
 
 7
 In this action filed on December 2, 1965, it was asserted that defendants had violated section 10(b) of the Securities Exchange Act by employing devices, schemes and artifices in selling shares of stock to plaintiffs. It was undisputed that defendants did not deliver a prospectus to any of the investors and that the only written communications received by plaintiffs from the defendants were a letter dated October 24, 1962, giving notice of a special stockholders meeting for the purpose of a stock exchange, an official notice of the special stockholders meeting, a notice of the January 25, 1963, annual stockholders meeting dated December 21, 1962, a letter of October 1, 1963, concerning the reporting of dividends to the Internal Revenue Service and a statement of financial operations and retained earning of B & E Securities, Inc., for the fiscal year ending June 30, 1963.
 
 
 8
 It was admitted that it was not disclosed to plaintiffs the rights, privileges and preferences of the various classes of securities nor the manner in which the funds or assets of the corporation would be applied if the funds obtained from the issuance of stock were insufficient or the corporation was otherwise unable to engage in its proposed business activities. It was further admitted that neither B & E nor any securities issued by B & E were registered under the provisions of the Investment Company Act of 1940, that the defendant B & E, Inc., never complied with any of the statutory requirements of the Investment Company Act of 1940 and that the sales of the capital stock of B & E, Inc., were never registered with the Securities and Exchange Commission pursuant to the Securities Act of 1933, as amended.
 
 
 9
 It was specifically found by the jury in answer to special interrogatories submitted to them that the defendant B & E Securities, Inc., in connection with the sale of securities to plaintiffs made untrue statements of fact and omitted to state facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading and that such misrepresentations or omissions were material.[4]
 
 
 10
 The jury further found with respect to plaintiffs' allegations that defendants' actions had concealed the fraudulent omissions and that plaintiffs had been lulled into not presenting an action based on these omissions earlier. The jury held that during the shareholders meeting of January 25, 1963, the plaintiffs first knew, or in the exercise of reasonable diligence and inquiry should have known, about the facts constituting such misrepresentations or omissions and that the plaintiffs should have known on or about May 7, 1962, that B & E Securities, Inc., engaged or proposed to engage primarily in the business of investing, reinvesting and trading in securities. Based upon these findings the trial court determined as a matter of law that plaintiffs were entitled to a judgment against the defendants on their first count but were barred by the statute of limitations from recovering under the second count. The various claims of the parties on appeal raise three basic issues: (1) whether the lower court was correct in dismissing the class action; (2) whether the cause of action based upon the Investment Company Act should have been held to be barred, and (3) whether the trial court applied the correct rule as to the measure of damages to be applied in 10b-5 actions.
 
 
 11
 This case presents the first occasion for this court to consider the scope of revised Rule 23 of the Federal Rules of Civil Procedure. Rule 23, as Amended, became effective July 1, 1966, and this action was filed in December, 1965. However, the decision on the question of allowing the class action was not made until August, 1966. As a result, the lower court considered it within its discretion to apply either the old or new rule. Inasmuch as the amendment of Rule 23 was intended primarily as a simplification and clarification of the prior rule and because the trial court did consider the new rule, we will review this decision solely on the basis of the rule as amended.[5]
 
 
 12
 Rule 23(a) and (b) delineate the factors to be considered in determining the propriety of a class action. The trial court considered, and the parties agree, that the four prerequisites found in Rule 23(a) were present in the instant case. Subdivision (b) establishes three further criteria and requires that one of these be fulfilled before a class action is maintainable. The controversy to be resolved here is whether the provisions of 23(b) (3) were met.[6]
 
 
 13
 Before a class action can be established under (b) (3) it is necessary to find, first, "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and second, "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."[7]
 
 
 14
 The lower court found, that as to the 10b-5 count, the individual questions involving the dissimilarity of oral representations, the issue of reliance and the matter of knowledge sufficient to invoke the statute of limitations, were the primary issues presented.[8] Consequently the court was of the opinion that the common questions did not predominate. "If there could be thought some question about this, the difficulties likely to be encountered in the management of the class action in this case, and the relatively limited benefits, if any, such an action could accomplish at greatly increased burden, have persuaded me to exercise whatever discretion I possess in proceeding otherwise."[9] The trial Judge further stated that "[t]he purchasers of stock from the defendant corporation are not so numerous as to preclude intervention by those interested in the litigation,"[10] indicating that in his opinion the procedural technique of intervention would be superior to a class action in the present case.
 
 
 15
 We are thus faced with the question of whether the trial court was too restrictive in its interpretation of Rule 23 in not allowing this class action to proceed. Undoubtedly the possibility exists that there will be questions of individual oral misrepresentation to each of the potential plaintiffs relating to their inducement in buying the securities and in lulling them sufficiently to toll the statute of limitations. On the other hand, an examination of the Second Amended Complaint filed by the plaintiffs shows that the real basis of their allegations concerns the failure of the defendants to make any representations concerning relevant and material facts, i. e., certain omissions of material facts common to all purchasers. Clearly all of the purchasers received "dividends" from the defendant corporation which in connection with the minutes from the stockholders meetings and notices and letters sent to all shareholders were the primary considerations in determining whether the statute of limitations had been tolled. Finally, the issue in any 10b-5 action, upon which all others depend, is the existence of fraudulent and manipulative conduct relating to the sale of the securities. Having alleged that there was no attempt to comply with the registration or periodic reporting provisions of the Securities Exchange Act, that there were omissions and half truths common to all purchasers, and that, as to all shareholders, there had been common letters and reports, it is apparent that the issue of liability — disregarding the defense of limitations — was to be the same as to all purchasers.
 
 
 16
 As to the Investment Company Act the lower court acknowledged that the claims of each and every member of the class were identical. Inasmuch as plaintiffs were merely required to show that B & E was an investment company, that it had not registered and that the individual defendants were controlling persons, the activities of the plaintiffs could have little or no effect upon the operative facts determining liability. Hence, while the propriety of allowing a class action on the 10b-5 count is an extremely close question, there is really little doubt, as to the Investment Company Act, that the common issues predominate. Consequently, there does exist as to the totality of issues a common nucleus of operative facts such as would justify allowing the class action to proceed under newly amended Rule 23. It cannot be denied that the resolution of the class action issue in suits of this type places an onerous burden on the trial court. But if there is to be an error made, let it be in favor and not against the maintenance of the class action, for it is always subject to modification should later developments during the course of the trial so require. Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 566 (2d Cir. 1968).
 
 
 17
 It is no doubt true that in determining the predominance of common over individual questions, the critical test is "whether there is `material variation' in elements like the representations made by the defendants to different members of a plaintiff class or the degrees of reliance by members of the class."[11] Accordingly, defendants stress the fact that there were oral misrepresentations that varied with respect to each of the purchasers. It is urged that this factor is exactly what was referred to by the Advisory Committee when it declared that "a fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action, and it may remain so despite the need, if liability is found, for separate determination of damages * * *. On the other hand, although having some common core, a fraud case may be unsuited for treatment as a class action if there was material variation in the representations made or in the kinds or degrees of reliance by the persons to whom they were addressed." 39 F.R.D. 103. This has no applicability as to the Investment Company Act because the existence of oral misrepresentations is of no consequence. As to the 10b-5 action, the statement is relevant but not controlling. This is because the plaintiffs were not relying merely upon oral misrepresentations whose content would vary as to the class members, but rather, as later established at the trial, the investors did not rely upon oral misrepresentations at all, or for that matter upon any affirmative misrepresentations, but upon a complete failure to disclose any material facts — which default was necessarily common to all shareholders.[12]
 
 
 18
 There have been a number of cases considering the effect of newly amended Rule 23.[13] In Kronenberg v. Hotel Governor Clinton, Inc., 41 F.R.D. 42 (S.D. N.Y.1966), it was recognized that although oral misrepresentations might make a class action more difficult it still could be maintained. "While there may be different kinds of misrepresentations alleged with respect to different plaintiffs, including some oral misrepresentations, and while such factors might have led to a dismissal of the class action under the old rule [citations omitted] the new Rule 23 provides the flexibility to permit this action to proceed." Id. at 45. Thus, the new rule is designed to expand the situations in which a class action is appropriate. However, even under the old rule it was held that the potential dissimilarity of misrepresentations would not prohibit a class action when the omissions relied upon, in addition to affirmative misrepresentations, established a common course of conduct. Harris v. Palm Springs Alpine Estates, Inc., 329 F.2d 909, 914 (9th Cir. 1964).
 
 
 19
 In Harris it was asserted that because the investors made payments on the securities at different times and stood in different positions with respect to the representations made to them and the reasonableness of their reliance, the common issues did not predominate. The court answered: "But even assuming these premises to be true, since the complaint alleges a common course of conduct over the entire period, directed against all investors, generally relied upon, and violating common statutory provisions, it sufficiently appears that the questions common to all investors will be relatively substantial." Id. at 914.
 
 
 20
 In Dolgow v. Anderson, 43 F.R.D. 472 (E.D.N.Y.1968), Weinstein, J., in an extensive opinion dealing with the effect of the amendments of Rule 23, declared that: "Unpersuasive is defendants' reliance upon the fact that there are involved a plethora of statements, not all of which were necessarily brought to the attention of all investors." Id. at 489. In addition, it was stated that "[D]efendants argue that each member of the class would have to prove reliance, compliance with the statute of limitations, and damages, and thus the common questions cannot be said to predominate over those affecting individual members. * * * The common issues need not be dispositive of the entire litigation. The fact that questions peculiar to each individual may remain after the common questions have been resolved does not dictate the conclusion that a class action is not permissible." Id. at 490.
 
 
 21
 We hold, therefore, that the common questions presented, both by the 10b-5 and Investment Company Act issues, were sufficiently predominate to satisfy the first prerequisite for a 23(b) (3) type of class action.
 
 
 22
 The remaining consideration in determining the propriety of the class action is whether it is superior to other available procedural devices. The lower court indicated that efficiency could best be served in the instant case by allowing intervention. However, the procedures available for handling proliferated litigation, including intervention, presuppose "a group of economically powerful parties who are obviously able and willing to take care of their own interests individually * * *." Frankel, Amended Rule 23 from a Judge's Point of View, 32 Antitrust L.J. 295, 298 (1966). Yet if the purchasers fit this description, it is to be supposed that the defendants would join in demanding a class action since they could scarcely desire to defend separate actions by each party they have now admittedly injured. Hence, there can be little doubt that this action on behalf of more than 200 defrauded securities purchasers presents a particularly appropriate situation for a class action. To resolve in one suit the common questions of liability under the Exchange Act — the existence and materiality of fraudulent conduct — and the Investment Company Act — the existence of an unregistered investment company — and the status of alleged controlling persons under both acts, eliminates the need for each injured investor to attempt to separately prove these basic allegations. "Thus, it is virtually certain that a class action will `achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated.'" Dolgow v. Anderson, supra at 488.
 
 
 23
 In sum, it is entirely understandable why the lower court, considering merely the abstract question of whether common issues predominate, decided as it did. But taking the issue in the context of the securities laws and realizing that "the ultimate effectiveness of the federal remedies * * * may depend in large measure on the applicability of the class action device," 3 Loss, Securities Regulation 1819 (2d ed.1961), the interests of justice require that in a doubtful case, such as was presented here when considered by the trial court, any error, if there is to be one, should be committed in favor of allowing the class action. In the usual case when the class action is being considered prior to trial, it is within the power of the court to limit either the issues or the parties. The same remains true here. If it develops as to some of the investors that they had superior knowledge or received unique representations or that they were in some way atypical, then the subclass authorization of Rule 23, or some other procedural device can be fashioned to meet the exigencies of the situation.[14]
 
 
 24
 We turn now to the issues presented by the lower court's barring the cause of action under the Investment Company Act of 1940. The jury in answering a special interrogatory found that, considering all the pertinent circumstances, including the payment of dividends, and any other lulling or concealing activity on the part of the defendants, the plaintiffs knew or should have known on May 7, 1962, that B & E Securities, Inc., was engaged or proposed to engage primarily as an investment company as defined by the Act. Because the Investment Company Act does not contain an applicable statute of limitations certain state statutes were applied to determine whether the cause of action was barred. In so doing, the trial court correctly determined that it must look to the statutes of the forum state.[15]
 
 
 25
 Section 78-12-27 of the Utah Code Annotated was applied to the individual defendants. This section provides for a three year limitation period for relief based upon a statutory violation by the directors of a corporation.[16] Because this action was instituted more than three years after May 7, 1962, the action was declared to be barred.
 
 
 26
 Plaintiffs contend that the trial court should have applied section 78-12-23 which declares that an action based upon a written contract may be instituted any time within six years. However, in seeking to establish that the security purchase agreement was founded upon a written obligation the plaintiffs are forced to rely upon a personal check, a promissory note and stock certificates as the only written indicia of the agreement. It thus becomes apparent that the action is not founded upon a written instrument.[17]
 
 
 27
 It is further contended that it is established Utah law that when there is some doubt as to the statute of limitations to be applied the court should apply the statute which permits the action to proceed. Nonetheless, in characterizing the action under the Investment Company Act for purposes of determining the most appropriate state statute, it cannot be gainsaid that the gist of the action is not the breach of a written contract. Inasmuch as this is the relevant inquiry in determining which statute to apply, it follows that the decision by the lower court to apply the three-year statute relating to statutorily imposed liability is exceedingly more appropriate. The action is grounded in the failure to meet the requirements of the Investment Company Act. It is difficult to conceive of a statute of limitations that could be more compatible in this context.
 
 
 28
 The trial court held that as to the defendant corporation the action was likewise barred. The court applied section 78-12-25(2), Utah Code Annot., which provides that an action may be instituted within four years for any action not otherwise governed by any of the other more specific limitation sections. Applying this catchall section and the appropriate date of May 7, 1962, it is difficult to understand why the action was held to be barred. The four year period of limitation would not have elapsed until May 7, 1966; yet the action was admittedly instituted in December, 1965. Plaintiffs urge on appeal that this error can be explained only as a result of the fact that the lower court failed to apply the federal tolling policy. If that were the situation, then the applicable dates would be September and November, 1961, the dates of the purchase of the securities. If this had been the court's approach then it undoubtedly would have precluded the issue in the pretrial order or in some fashion have indicated the reason for the divergent treatment of the defendant corporation and the individual defendants. Yet nowhere in the record is there any enlightening explanation.[18]
 
 
 29
 In any event, the federal law clearly requires that in every limitation question the old chancery doctrine of equitable tolling is to be applied. In Holmberg v. Armbrecht, 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946), the Supreme Court announced the proposition that "where a plaintiff has been injured by fraud and `remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered * * *.'" This federal policy of tolling has consistently been applied to actions brought under section 10(b) of the Exchange Act;[19] it has been applied to actions under section 16(b) of the Exchange Act, Grossman v. Young, 72 F.Supp. 375 (D.N.Y.1947); and this court has sanctioned its application to the Clayton Act, Public Service Co. of New Mexico, et al v. General Electric Co., 315 F.2d 306 (10th Cir. 1963). Thus, as indicated in Janigan v. Taylor, supra, it is a matter of federal law as to the circumstances that will toll a state statute applied to private actions under the securities laws. Accordingly, applying the four year period of limitation, the federal policy of tolling, and the appropriate date as found by the jury of May 7, 1962, it appears that the action against B & E was not barred.
 
 
 30
 The defendants have indicated that the jurisdiction of the court was challenged in regard to the private action based upon the Investment Company Act. They did not find it necessary to discuss the problem in any detail. As a result, it becomes necessary for this court to consider the issue on its own motion.
 
 
 31
 In view of the recent developments of the law in implying private civil remedies for violations of the various federal securities laws, the strong indication is that when given the opportunity, the Supreme Court following the policy announced in J. I. Case Co. v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964), will find an implied civil liability arising from the Investment Company Act thereby superseding the only authority to the contrary, Brouk v. Managed Funds, 286 F.2d 901 (8th Cir. 1961). Brouk was implicitly overruled by Greater Iowa Corp. v. McLendon, 378 F.2d 783 (8th Cir. 1967), in which the court indicated that the other Circuits passing on the question had upheld a private cause of action. This court, therefore, finds that although the Investment Company Act makes no specific provision for private civil liability arising from the violations of the Act such liability may be implied.
 
 
 32
 The court below in its conclusions of law found that B & E was at all times after July 1, 1961, an unlicensed investment company within the definition, meaning and intent of the Act. Hence, the cause of action against B & E should have been sustained and the requested rescission of the security purchase arrangement allowed.[20] This conforms with the provisions of the Act declaring any contracts made by an investment company in violation of the Act (including the sale of unregistered securities) to be void.[21]
 
 
 33
 Lastly, defendants contend that as to the 10b-5 action the lower court committed error in awarding damages to the plaintiffs in the amount of $15,600.00. The issue of damages was submitted below upon a special interrogatory requesting the jury to ascertain the value of the purchased securities at three pertinent dates, i. e., the date of purchase, the date the suit was instituted and the date of the trial. The jury found that the securities were worthless on the latter two dates but determined that as of the date of purchase the preferred shares had a value equal to the purchase price. The common stock was valued at $.60 per share. On the basis of these findings plaintiffs' damages would be limited to $320.00.
 
 
 34
 The lower court, however, disregarded the jury finding choosing rather to fix the relevant date for determining the loss as of the date of the plaintiffs' discovery of the fraud. Inasmuch as the jury had not been requested to fix the value on this latter date, the court exercised its reserved power under Fed. R.Civ.P. 49 and found that "on January 25, 1963, when plaintiffs were charged with notice of said defendants fraud this stock had a reasonable and actual value of less than 25 cents per share." The plaintiffs were thus allowed a recovery of $15,600.00.[22]
 
 
 35
 The defendants contend that the proper measure of damages is the difference between the amount plaintiffs paid for their stock in 1961 and its actual value at that time. As support for this position defendants cite Estate Counseling Service, Inc. v. Merrill, Lynch, Pierce, Fenner and Smith, Inc., 303 F.2d 527 (10th Cir. 1962). In that case this court was concerned with the distinction between "benefit of the bargain" and "out of pocket" damages. In adopting the latter view, the specific question of the appropriate date for ascertaining such damages was not before the court. Our statement that "the question is not what the plaintiff might have gained, but what he has lost by being deceived into the purchase," does, however, point to the crux of the issue here presented.
 
 
 36
 The plaintiffs have incurred a loss as a result of the fraudulent practices of the defendants in the sale of securities in violation of the securities laws. The extent of this loss will not necessarily be fully known until some time after the original transaction. This follows because the same fraudulent practices that have induced the plaintiffs' purchase of the securities also operate on other buyers thereby affecting the prevailing market price. It is not until the existence of the fraudulent conduct is known that the true value of the securities as an investment can be ascertained.[23] Accordingly, where the purchaser acquires the securities for investment purposes, and thus intends to retain them for a reasonable period of time, the actual extent of the loss sustained may be ascertained as of the date the purchaser realizes, or should realize, that he has been defrauded. It is at this date, when the purchaser discovers the fraud, that he is first in a position to seek redress either through a rescission of the contract, or in an action for damages.[24]
 
 
 37
 We hold, therefore, under the facts and circumstances of this case that the appropriate date to be applied in determining damages is the date on which the fraud was, or in the exercise of reasonable diligence should have been, discovered. Thus the defrauded buyer is entitled to recover the difference between the price paid for the securities with interest from the date of purchase, and the value of the securities determined as of the time of the discovery of the fraud. In addition, the buyer is entitled to recover any additional outlays attributable to the defendant's conduct less dividends or any other payments received from the defendant seller. The damages awarded below do not specifically conform to this formula. However, the plaintiffs having failed to raise the issue, the amount of damages must remain undisturbed.
 
 
 38
 The money judgment in favor of appellees and against appellants is affirmed and the case is remanded for further proceedings in accordance herewith.
 
 
 
 Notes:
 
 
 [1]
 B & E Securities, Inc., is not a party to this appeal but all of the originally named individual defendants are appellants and cross-appellees
 
 
 [2]
 Hirschi v. B & E Securities, Inc., 41 F.R.D. 64 (D.Utah 1966)
 
 
 [3]
 The Hirschis purchased shares of stock in B & E as follows:
 Date No. of Shares Class Consideration

 9-27-61 10,000 A Preferred $10,000
11-30-61 10,000 B Preferred $10,000
11-30-61 800 Common $ 800
 
 
 [4]
 In addition, the jury found: (1) that B & E Securities, Inc., had knowledge that such statements were untrue or that there were such omissions and that such misrepresentations were intentionally made with knowledge on the part of B & E Securities, Inc.; (2) that plaintiffs would rely upon them in making stock purchases; (3) that William A. Barlocker, L. J. Esplin and K. C. Weaver were controlling persons at the time plaintiffs purchased their shares of stock of B & E Securities within the meaning of the Securities Exchange Act; (4) that Leo Reeve, Arthur Barlocker and Doyle Sampson were not such controlling persons; (5) that William Barlocker, Lee Esplin, Arthur Barlocker, Leo Reeves, Doyle Sampson and K. C. Weaver knowingly made or aided or abetted in the making of such material misrepresentations or omissions which were substantial factors in the decision of the plaintiffs to purchase such securities; (6) that B & E Securities engaged or proposed to engage primarily in the business of investing, reinvesting or trading in securities at some time from the organization to the time of sale of such securities to plaintiffs; and (7) that William Barlocker at the time of the sale of such securities to plaintiffs was a controlling person with respect to the activities of B & E Securities, Inc., within the meaning of the Investment Company Act of 1940
 
 
 [5]
 In the discretion of the court the amended rule can be applied to actions pending when it becomes effective. 2 Barron and Holtzoff, Federal Practice and Procedure § 562, p. 86 (1967 Supp.), citing: Harris v. Jones, 41 F.R.D. 70, 74 (D.Utah 1966); Brennan v. Midwestern United Life Ins. Co., 259 F.Supp. 673, 683 (N.D. Ind.1966); and Booth v. General Dynamics Corp., 264 F.Supp. 465, 471 (N.D. Ill.1967)
 
 
 [6]
 The lower court did not expressly ascertain the applicability of (b) (1) and (b) (2). Plaintiffs suggest that the action should be remanded to the trial court for specific determinations on those grounds. However, plaintiffs made no suggestion as to how this factual setting could be found to relate to those subsections, hence the district court was justifed in not expressly considering them in its memorandum decision
 
 
 [7]
 In arriving at these determinations the court is directed to weigh four non-exhaustive factors: the interest of the class members in individually controlling separate suits, the extent and nature of litigation already pending, the desirability of concentrating litigation in a particular forum, and the difficulties likely to be encountered in managing a class action. F. R.Civ.P. 23(b) (3) (A), (B), (C) and (D)
 
 
 [8]
 The court stated:
 "There are some common issues of fact and law involved in this action. On the other hand it appears that there are questions of law and fact affecting the individual members of the class which could not be common to all the members of the class. For example: Whether the individual members relied upon specific or any oral representation made to them and not to members of the class in general; whether there was reliance upon representations made to others, and whether the particular member had knowledge or notice of the alleged causes of action early enough to be barred by the statute of limitations. These, I apprehend, may become primary issues in the case." Hirschi v. B & E Securities, Inc., 41 F.R.D. 64, 67 (D. Utah 1966).
 
 
 [9]
 41 F.R.D. at 68
 
 
 [10]
 41 F.R.D. at 69
 
 
 [11]
 Bromberg, Securities Law; Fraud — SEC Rule 10b-5 § 11.6 p. 257 (1968)
 
 
 [12]
 In support of the lower court opinion it should be noted that a significant part of the transactions between defendants and plaintiffs were the statements made to plaintiffs before they purchased their stock. However, such statements would apply in general to all buyers who were the victims of the same omissions. The fact that one or more members of the class may have received additional affirmative misrepresentations would be merely cumulative inasmuch as the omissions alone were sufficient to establish deceptive practices. In sum, it was alleged and later proved that the omissions which were the operative facts relied upon to show fraud were the same as to all investors
 
 
 [13]
 E. g., Eisen v. Carlisle & Jacquelin, supra; Moscarelli v. Stamm, 288 F.Supp. 453 (E.D.N.Y.1968); Brennan v. Midwestern United Life Ins. Co., 259 F.Supp. 673 (N.D.Ind.1966); Fischer v. Kletz, 41 F.R.D. 377 (S.D.N.Y.1966); Harris v. Jones, 41 F.R.D. 70 (D.Utah 1966)
 
 
 [14]
 In holding that the class action should have been allowed, it becomes necessary to comment briefly on the effect of this upon the statute of limitations issue. This court has held that the commencement of a spurious class action halts the running of the statute as against all members of the class. Union Carbide and Carbon Corp. v. Nisley, 300 F.2d 561, 590 (10th Cir. 1962). The same will be true under newly amended Rule 23. Hence, the rights of all class members are to be determined as if the class action had been allowed instead of being incorrectly terminated below. This means that the status of class members is to be determined by relation back to the date of the initiation of this suit in December, 1965
 
 
 [15]
 There are a substantial number of decisions considering the question of which statute to apply to actions based upon § 10(b) and Rule 10b-5 of the Exchange Act. See Chiodo v. General Waterworks Corp., 380 F.2d 860 (10th Cir. 1967); Janigan v. Taylor, 344 F.2d 781 (1st Cir. 1965). The parties are agreed, and this court is persuaded, that the reason for applying the forum state statute in 10b-5 actions applies as well to implied private actions under the Investment Company Act of 1940
 
 
 [16]
 "Actions against directors or stockholders of a corporation to recover a penalty or forfeiture imposed, or to enforce a liability created, by law must be brought within three years after the discovery, by the aggrieved party, of the facts upon which the penalty or forfeiture attached, or the liability accrued * * *." Utah Code Annot., § 78-12-27 (1953)
 
 
 [17]
 The Utah Supreme Court analyzed the applicability of the six year statute, holding that in order to be applicable the action must befounded upon a written instrument, i. e., "when the contract, obligation, or liability grows out of written instruments, (emphasis by the court) not remotely or ultimately, but immediately." (Emphasis supplied). Bracklein v. Realty Ins. Co., et al., 95 Utah 490, 80 P.2d 471, 476 (1938).
 
 
 [18]
 It is conceivable that the lower court merely applied the statutes as framed by the state. The statute applied to the 10b-5 count and that applied to the individual defendants under the Investment Company Act, both containedwithin the statute a provision incorporating tolling until the discovery of the operative facts by the plaintiff. The statute applied to the defendant corporation does not contain such an express provision. However, if this were indeed the theory below, it was error. In Janigan v. Taylor, 344 F.2d 781 (1st Cir. 1965), the court read the tolling provision into the Massachusetts statute, concluding that it is a matter of federal law as to the circumstances that will toll the statute. "Although Massachusetts law apparently requires active concealment in order to toll a statute of limitations re fraud, the Court applied the federal tolling approach which is characterized as one under which fraud is viewed as automatic concealment until discovery." Bloomenthal, Securities Law 464 (1966).
 
 
 [19]
 See Bloomenthal, supra at 463
 
 
 [20]
 Obviously, cross-appellants will not be entitled to recover under both Rule 10b-5 and the Investment Company Act. The entire discussion of the latter point was made necessary because of the further proceedings to be had in the case as a class action
 
 
 [21]
 15 U.S.C. § 80a-7(b) and 80a-46(b) (1964)
 
 
 [22]
 The $15,600 in damages was arrived at by subtracting $5200 ($.25 x 20.800) from the purchase price of $20,800
 
 
 [23]
 Loss, Securities Regulation 1630 (2d ed. 1961)
 
 
 [24]
 See, Restatement of Torts § 549, Comment c; and Loss, supra, at 1630 and 1793