**UNITED STATES of America, Plaintiff,**

v.

**GENERAL RESEARCH LABORATORIES, a corporation, et al., Defendants.**

**No. CV–73–2917.**

United States District Court, C. D. California.

April 25, 1975.

William D. Keller, U. S. Atty., Frederick M. Brosio, Jr., Asst. U. S. Atty., Chief, Civ. Div., Dzintra I. Janavs, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff.

Stephen Tornay, San Diego, Cal., for defendants.

Jay H. Geller, Associate Chief Counsel, for Enforcement Food and Drug Administration, Los Angeles, Cal.

FINDINGS OF FACT AND CONCLUSIONS OF LAW

LUCAS, District Judge.

This cause having come on for trial on Tuesday, April 22, 1975, the plaintiff appearing by its attorneys William D. Keller, United States Attorney, Frederick M. Brosio, Jr., Assistant U. S. Attorney, Chief of Civil Division, by Dzintra I. Janavs, Assistant U. S. Attorney, and defendants appearing by their attorney Stephen Tornay, the Court having considered all of the evidence presented and admitted, having read the written briefs filed, having heard the oral argument of counsel, being fully advised, makes the following:

FINDINGS OF FACT

1. This is an action filed by the United States of America, pursuant to the provisions of the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 332(a), seeking to enjoin defendants from shipping the articles "(picture of Bee) Seventeen" (hereafter B17) and "Aprikern" in interstate commerce or holding them for sale after shipment in interstate commerce.

2. The defendant, General Research Laboratories, is a corporation organized

and existing under the laws of the State of California and trading and doing business at 6925 Hayvenhurst Avenue, Van Nuys, California, within the jurisdiction of this Court.

3. The defendant, Alex S. Geczy, an individual, is the president of said corporation and performs his duties as such at 6925 Hayvenhurst Avenue, Van Nuys, California, within the jurisdiction of this Court.

4. The defendant, Nancy L. Geczy, an individual, is the vice president of said corporation and performs her duties as such at 6925 Hayvenhurst Avenue, Van Nuys, California, within the jurisdiction of this Court.

5. The defendant, Donald J. Kuehne, an individual, is the secretary of said corporation and performs his duties as such at 6925 Hayvenhurst Avenue, Van Nuys, California, within the jurisdiction of this Court.

6. The defendant, Institute of Nutritional Research is a corporation organized and existing under the laws of the State of California and trading and doing business, within the jurisdiction of this Court.

7. The defendant, Emory W. Thurston, Ph.D., Sc.D., an individual, is an official of said Institute of Nutritional Research and nutrition consultant to General Research Laboratories and performs his duties, within the jurisdiction of this Court.

8. The articles B17 and Aprikern are distributed in interstate commerce and manufactured from ingredients shipped in interstate commerce.

9. The articles B17 and Aprikern are used for food for man.

10. The article B17 consists of several vitamins and minerals miscellaneous nutrients, and 500 mg. of amygdalin in a base of apricot fruit and kernel concentrate.

11. The article Aprikern consists of a one gram gelatin capsule containing four ground and defatted apricot kernels.

12. The label for the article B17 states that it is a food for special dietary use.

13. The label for the article B17, by stating that the food is a food for special dietary use, and listing the apricot fruit and kernel concentrate containing 500 mg. of amygdalin along with the sixteen vitamins and minerals, represents and suggests that the apricot fruit and kernel concentrate containing 500 mg. of amygdalin is a nutrient with special dietary properties.

14. Apricot fruit and kernel concentrate containing 500 mg. of amygdalin is not a nutrient with special dietary properties.

15. The logogram "(picture of a Bee) Seventeen" on the label of the article B17 represents to the consumer that the product is or contains Vitamin B17, and that Vitamin B17 is a vitamin recognized in human nutrition and a vitamin of the B complex.

16. "Vitamin B17" is also commonly known as amygdalin and laetrile.

17. There is no Vitamin B17 that is a recognized vitamin in human nutrition.

18. There is no vitamin of the B complex that is recognized in human nutrition as Vitamin B17.

19. The article Aprikern contains hydrogen cyanide in the amount of 1.5 mg. to 2.7 mg. per gram of ground and defatted apricot kernel and 1.09 mg. to 1.60 mg. hydrogen cyanide per capsule of aprikern.

20. When hydrogen cyanide is present in the human body at a rate greater than the body's ability to detoxify the hydrogen cyanide, cyanide poisoning, manifested by labored breathing, vomiting, ataxia, convulsions and death occurs.

21. Acute oral toxicity tests conducted by the University of Arizona Department of Pharmacology and Toxicology determined the minimum lethal dose of Aprikern (50% of or more of the subject animals died) to be 2g/kg of body weight in rats. These tests determined

that Aprikern administered at the rate of lg/kg of body weight caused symptoms of cyanide poisoning, including labored breathing and convulsions, without death. Control group animals showed no effects.

22. Acute oral toxicity tests conducted by the FDA established a minimum lethal dose of Aprikern at the rate of 2.5g/kg of body weight. At a level of 1.9 and 2.2g/kg of body weight, the subject animals showed signs of cyanide poisoning, including labored breathing, convulsions and death. At a rate 2.8, 3.1 and 3.4g of Aprikern per kg of body weight, all animals died.

23. Acute oral toxicity tests of Aprikern in beagle dogs conducted by the FDA revealed vomiting and convulsions when Aprikern was administered at a rate of 1.5g/kg body weight via stomach tube, vomiting and convulsions occurred; when administered at a rate of 2.2g/kg body weight in meat, vomiting occurred; when administered in capsule form at a rate of 2.5g/kg body weight, vomiting and convulsions occurred.

24. Acute toxicity tests of Aprikern in monkeys conducted by the FDA revealed vomiting, labored breathing and malaise when capsules were fed at a rate of 1.2 and 1.3g/kg of body weight; when administered by gavage at a rate of 2.4g/kg body weight, vomiting, convulsions and death occurred; when administered at a rate of 1.4g/kg body weight, labored breathing and vomiting occurred.

25. The lethal dose of hydrogen cyanide in human beings ranges between 50 and 280 mg for an 80 kg person.

26. Due to its hydrogen cyanide content, Aprikern is unfit for food.

27. Amygdalin is present in both of the articles B17 and Apirkern.

28. The presence of the substance amygdalin in ground and defatted apricot kernels and apricot kernel concentrate in both B17 and Aprikern results in its becoming a component of the said articles of food.

29. Amygdalin is not generally recognized by experts qualified by scientific training and experience to evaluate its safety, as having been shown through scientific procedures, including original animal, analytical and other scientific studies and on an unprejudiced compilation of both favorable and unfavorable reliable information drawn from the scientific literature, to be safe under the conditions of its use in the articles B17 and Aprikern.

30. There is no regulation in effect permitting the use of amygdalin in foods as a food additive or exempting amygdalin from the food additive requirements of the Federal Food, Drug and Cosmetic Act.

31. Vitamin B17, also known as amygdalin and laetrile are used in the treatment, prevention, cure and mitigation of cancer in man.

32. Said substance is an unproven or unorthodox cancer remedy.

33. The danger in the use of such remedies by public and specifically cancer victims is in their delaying or foregoing diagnosis and treatment which is generally recognized by the medical profession as beneficial and effective.

34. The defendants and their agents have sold and promoted B17 and Aprikern at International Association of Cancer Victims and Friends and Cancer Control Society Conventions and other conventions where unorthodox methods on cancer prevention and treatment have been significant topics of lectures and speeches.

35. At these conventions speakers have displayed B17 in connection with speeches concerning benefits of laetrile, also known as amygdalin, and Vitamin B17 in cancer cure and prevention.

36. Literature by defendant Thurston, published by the Thurston Division of General Research Laboratories, speaks of the benefits of laetrile also known as

amygdalin and Vitamin B17 in treating of cancer.

37. One item of such literature also contains a picture of defendant Thurston standing next to Dr. Dean Burk in front of a sign "General Research Laboratories". The caption states: "Dr. Dean Burk, Chief Cytologist at the National Cancer Institute . . . is an interested observer while Emory Thurston samples the new 'breakfast drink' Seventeen (first demonstrated at the convention in Los Angeles in July)."

38. Defendants and their agents have represented B17 and Aprikern to be the same as and/or similar to laetrile.

39. Defendants have represented B17 and Aprikern to be used in the treatment, prevention, cure and mitigation of cancer.

40. Defendants intend the articles B 17 and Aprikern to be used in the treatment, prevention, cure and mitigation of cancer in man.

41. The labels for the articles B17 and Aprikern fail to bear any warnings or directions for use or other information connected with its use, including dosage, duration and frequency of administration.

42. Defendants' correspondence shows that B17 and Aprikern were perceived by public as therapeutic for cancer and that defendants were aware of this and that defendants sold said products for prevention and treatment of cancer.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction herein.

2. The articles B17 and Aprikern are foods within the meaning of 21 U.S.C. § 321(f).

3. The articles are also drugs within the meaning of 21 U.S.C. § 321(g), since they are intended for use in the treatment and prevention of cancer.

4. Amygdalin is a food additive within the meaning of 21 U.S.C. § 321(s).

5. B17 and Aprikern are adulterated within the meaning of 21 U.S.C. § 342 (a)(2)(C).

6. B17 is misbranded within the meaning of 21 U.S.C. § 343(a).

7. Aprikern is adulterated within the meaning of 21 U.S.C. § 342(a)(3).

8. Both B17 and Aprikern are misbranded within the meaning of 21 U.S.C. § 352(f)(1) and (2).

9. Any Finding of Fact which might be deemed to be a Conclusion of Law is hereby incorporated in these Conclusions of Law.

10. Plaintiff is entitled to a permanent injunction herein.