**Glen L. RUTHERFORD, Individually and on behalf of a class composed of terminally ill cancer patients, Plaintiffs,**

**v.**

**UNITED STATES of America et al., Defendants.**

**No. CIV–75–0218–B.**

United States District Court,
W. D. Oklahoma.

April 8, 1977.

See also, D.C., 424 F.Supp. 105; D.C., 399 F.Supp. 1208; 10 Cir., 542 F.2d 1137.

Burton J. Johnson and Kenneth R. Coe, of Watts, Looney, Nichols, Johnson & Hayes, Oklahoma City, Okl., for plaintiff class.

S. Paul Ragan, Associate Chief Counsel, Enforcement, Food and Drug Administration, Rockville, Md., and William S. Price, Asst. U. S. Atty., Oklahoma City, Okl., for defendants.

## MEMORANDUM OPINION

BOHANON, District Judge.

This cause came before the Court Friday, March 18, 1977, upon plaintiffs' "Application to Clarify Plaintiff Class" in the above-captioned class action. Plaintiffs requested that the Court enter Orders certifying the plaintiff class as including "all victims of cancer and their spouses who are responsible for the cost of treatment," and declaring as members of the plaintiff class all persons certified by a physician as having cancer. Defendants argued that plaintiff does not represent a class within the meaning of Rule 23 of the Federal Rules of Civil Procedure, that certification, in any event, should be limited to terminal cancer patients, that the FDA was within the scope of its authority in banning the importation and interstate transportation of laetrile, and that consequently the FDA should not be enjoined from preventing the use of laetrile.

Three basic issues emerge from the March 18, hearing and the evidence, arguments and submitted briefs.

### The Class Action Issue

Plaintiffs seek class certification in terms detailed above. Defendants oppose certification, asserting "that the class plaintiffs purport to represen' is 'too ill-defined and ephemeral in makeup' to render its members 'capable of definite identification,'" and arguing that, at most, certification should encompass only terminal cancer patients.

■ The class action was an invention of equity, mothered by the practical necessity of providing a procedural device so that mere numbers would not disable large groups of individuals, united in interest, from enforcing their equitable rights. *Montgomery Ward & Co. v. Langer*, 168 F.2d 182, 187 (8th Cir. 1948). As a function of equity, it must be invoked and applied only in accordance with basic principles of fairness and reason. Under federal law, precepts of class action theory are delineated in Rule 23 of the Federal Rules of Civil Procedure.

■ Rule 23 possesses as its basic objectives the efficient resolution of the claims of many individuals in a single action, the elimination of repetitious litigation and possibly inconsistent adjudications involving requests for similar relief, and the establishment of an effective procedure for those whose economic position is such that it is unrealistic to expect them to seek to vindicate their rights in separate lawsuits. *Federal Practice and Procedure* § 1754, Wright and Miller.

■ Having carefully reviewed the facts and circumstances of this case, the applicable case law, and the requirements of Rule 23, the Court is persuaded it is appropriate to administer this matter as a class action.

In so deciding the Court has necessarily determined that plaintiff class is so numerous as to render joinder impracticable, that there are questions of law and fact common to the members of the class, that the claims of the representative plaintiffs are typical of the claims of the entire class, and that the representative plaintiffs will fairly and adequately protect the interests of the class. Additionally, the Court has concluded that defendants have acted on grounds generally applicable to the class in a way that renders injunctive relief proper. Rule 23, Federal Rules of Civil Procedure.

■ Although not specifically mentioned in Rule 23, an essential prerequisite of an action thereunder is that there must be a "class." *Weisman v. MCA, Inc.*, 45 F.R.D. 258 (D.Del.1968). Whether a class exists is a fact question to be resolved in each case. *Clark v. Thompson*, 206 F.Supp. 539 (D.Miss.1962). Rule 23 is to be construed liberally, and the class does not have to be so readily ascertainable that every potential member can be identified at the outset. *Carpenter v. Davis*, 424 F.2d 257

(5th Cir. 1970). Only the general outlines of the membership of the class must be determinable initially. *Berman v. Narragansett Racing Assn., Inc.*, 414 F.2d 311 (1st Cir. 1969). The requirement that there be a class will be deemed satisfied if class identification is sufficiently definite so that it is administratively feasible for the Court to determine whether a particular person is a member. *See Federal Practice and Procedure*, § 1760, Wright and Miller and cites therein.

Based on the evidence and arguments introduced since this case's inception, and to expedite administration of the Court's Order of January 4, 1977, plaintiff class is hereby certified as encompassing all "terminally ill cancer patients." The phrase "terminally ill cancer patient" refers to anyone who, in affidavit form as hereafter described, is declared by a practicing physician (M.D.) to be terminally ill.

Such affidavit shall include the following:

1. that there is histologic evidence of a rapidly progressive malignancy in the patient possessive of a high and predictable mortality rate; and
2. (a) that further orthodox treatment would not reasonably be expected to benefit the patient; or
   (b) that laetrile will be administered only in conjunction with established and recognized forms of cancer treatment; or
   (c) that the patient has made a knowing and intelligent election to take laetrile after being fully apprised of the full range of recognized treatments available and of the fact that laetrile is considered by most cancer experts to be of no value in combatting the disease.

Defendants assert that early diagnosis and prompt treatment are critical in the management of cancer and that needless and untimely deaths will occur if laetrile is used in preference to established methods of cancer treatment. Such arguments have little applicability to that fraction of cancer patients whose lives orthodox medical science professes no capacity to preserve. To speak of laetrile as being "unsafe" for these people is bizarre. Additionally, it is connotative of a paternalism incompatible with this nation's philosophy as to the proper relationship between the government and the citizenry.

Rule 23 is designed to avoid a multiplicity of lawsuits while protecting the substantive rights of plaintiffs and defendants. *In Re Four Seasons Securities Laws Litigation*, 63 F.R.D. 422 (W.D.Okl.1974). The salient issues in this case are such that defendants' position is in no way prejudiced by class action treatment; instead, defendants are saved the time and expense of defending a multitude of suits. At the same time, such treatment affords immeasurable benefits to the plaintiff class. Requiring litigation of protracted and expensive individual lawsuits would effectively serve to deny many terminal cancer patients the opportunity to have their claims adjudicated. Their disease has often left them with limited funds, and made time an even more precious commodity. It appears to the Court that ignoring the advantages of class action disposition of this case would evidence an indifference to judicial economy and the general spirit of the class action concept.

The question of whether to allow a suit to proceed as a class action is one primarily for the determination of the trial judge, and if he applies the correct criteria to the facts of the case, the decision should be considered to be within his discretion. *Gold Strike Stamp Company v. Christensen*, 436 F.2d 791 (10th Cir. 1970).

In cases such as this, where the ultimate effectiveness of a federal remedy may depend in large measure on the applicability of the class action device, all judicial discretion should be directed toward allowing the class action. *Esplin v. Hirschi*, 402 F.2d 94 (10th Cir. 1968).

Defendants urge that many cancer patients have no interest in the use of laetrile. The issue before this Court is not the wisdom of using laetrile, but rather the right of cancer patients to do so if they choose. It is not fatal to the maintenance

of a class action that some members of the class might prefer not to have violations of their rights remedied. *Leisner v. New York Telephone Company*, 358 F.Supp. 359, 372 (S.D.N.Y.1973); *Norwalk Core v. Norwalk Redevelopment Agency*, 395 F.2d 920, 937 (2nd Cir. 1968). The rights of patients unimpressed by laetrile's alleged therapeutic qualities are in no way prejudiced by this decision. Such persons must be as free to disregard laetrile as are their fellows to invoke it.

■ Further consideration of the appropriate bounds of the certified class is possible since the Court always has the authority to change class designations should developments so require. *Guarantee Ins. Agcy. Co. v. Mid-Continental Rlty. Corp.*, 57 F.R.D. 555 (N.D.Ill.1972); *Esplin v. Hirschi, supra* at 99.

### *The Issue of Laetrile as a New Drug*

This Court makes no determination on the limited evidence before it as to laetrile's ability to combat the ravages of cancer. Defendants have introduced evidence tending to establish the general opposition of medical authority in this country to the use of laetrile. Contrarily, the Court is aware of instances of patients and physicians in various parts of the country emphasizing personal experiences with laetrile's ability to counter aspects of the disease's manifestations and discomforts. Regardless, such issue is not before the Court, and the Court is cognizant that it possesses "neither the facilities nor the expertise" to independently determine the drug's therapeutic value. *Tutoki v. Celebrezze*, 375 F.2d 105, 107 (7th Cir. 1967).

It is unlawful to introduce any "new drug" into interstate commerce previous to the FDA's approval of a "new drug application" (NDA) establishing such drug as "safe" and "effective" for its intended use. The FDA has banned the importation and interstate shipment of laetrile on grounds that an NDA on its behalf has neither been filed nor approved.

In support of its position that plaintiffs are entitled to no substantive relief, defendants urge, *inter alia*, that the initial determination of the safety and efficacy of a "new drug" is the responsibility of the FDA, that FDA has no duty to approve a "new drug" in the absence of an NDA, and that the administrative procedures applicable to new drugs and outlined in the Federal Food, Drug and Cosmetic Act must be exhausted before a court has jurisdiction. These arguments are only relevant if the premise is accepted that laetrile is, in fact, a "new drug."

■ It is clearly established that FDA has power to determine whether a particular drug requires an approved NDA in order to be sold to the public. *Weinberger v. Hynson, Westcott & Dunning*, 412 U.S. 609, 624, 93 S.Ct. 2469, 37 L.Ed.2d 207 (1973). Its determination that a product is a "new drug" is, of course, reviewable. *Weinberger v. Hynson, supra*, at 627, 93 S.Ct. 2469. FDA does not have unbridled discretion to do what it pleases. Its procedures must satisfy the rudiments of fair play. *Weinberger v. Hynson, supra*. Where FDA declares a "new drug" where no NDA is in effect and no manufacturer is submitting an NDA, such declaration is reviewable by the district court under the Administrative Procedure Act, 5 U.S.C. § 701 et seq.; *Weinberger v. Hynson, supra*.

In an opinion in this same case, *Rutherford v. United States*, 542 F.2d 1137, 1143 (10th Cir. 1976), the Circuit Court held that FDA could not escape the obligation of producing an administrative record to support its determination that laetrile is a new drug, noting that "it is not a new drug merely because they [FDA] say it is." The Court further observed that based on the record in the case it appeared doubtful that FDA had in fact developed such an administrative record, and added that "to support its determination, FDA in the case at bar . . . . would have to present *substantial evidence* to support the proposition that laetrile is not generally recognized among qualified experts as 'safe and effective' and that laetrile is not grandfathered by either of the exemptions discussed above." (emphasis supplied)

As to the "grandfather clauses" the Circuit Court specifically found that if laetrile were either marketed as a cancer drug between 1938 and 1962 and recognized as safe, or if used as a cancer drug between 1906 and 1938 under the same conditions as presently used, it is exempt from being classified as a "new drug" by virtue of definitions contained in the Federal Food, Drug and Cosmetic Act. *Rutherford v. United States* (10th Cir.) *supra* at 1141.

Defendants recognize in their submitted brief that: "With respect to the grandfather clause of the 1962 amendments, the test generally is whether Laetrile was 'marketed before 1962 for exactly the same uses for which it is presently being sold and was generally recognized as safe for those uses.' *Tyler Pharmacal Distributors, Inc. v. United States Department of Health, Education and Welfare*, 408 F.2d 95, 99 (7th Cir. 1969)"

Nonetheless, FDA contends that if laetrile were marketed prior to 1962 it must still be shown to have been "effective" as well as "safe" if employed in the treatment of "a life-threatening disease."[1] *Durovic v. Richardson*, 479 F.2d 242 (7th Cir. 1973). The Supreme Court in *Weinberger v. Hynson, supra*, stated that "the 1962 amendments [of the Food, Drug and Cosmetic Act] for the first time gave FDA power to scrutinize and evaluate drugs for effectiveness as well as safety." 412 U.S. at 630, 93 S.Ct. at 2483. In any event, the case relied upon by FDA is clearly distinguishable from the case at bar. In *Durovic v. Richardson, supra*, the Court held that "(a)ny delay in the institution of effective therapy (e. g., radiation, surgery, effective chemotherapy) caused by the use of an ineffective drug allows the disease to progress beyond control. Delay means almost certain death." Significantly, in the present case plaintiff class is comprised of persons already determined to be terminally ill. Adopting FDA's rationale would mean that an individual suffering from a life-threat-ening disease for which there exists no known effective treatment would not lawfully be entitled to any treatment at all since no drug could be deemed "generally recognized as effective" in such a situation.

▮▮▮ Congress undoubtedly possesses the authority to proscribe drugs it considers dangerous to the public welfare. *Weinberger v. Hynson, supra* at 622, 93 S.Ct. 2469. The record in this case does not necessarily disclose any such Congressional intent as to laetrile. The FDA is not empowered to enforce its convictions concerning laetrile on the basis of its congressional mandate to monitor the introduction of "new drugs" into our society, if in fact laetrile has been used for decades in the treatment of cancer, and without ill effect. As implicitly recognized in *Rutherford v. United States*, (10th Cir. 1976) *supra*, the issue of the efficacy of laetrile is, at most, of secondary importance in this case. The legality of FDA's ban on laetrile is under attack on the theory that FDA arbitrarily and without sufficient basis in fact characterized laetrile as a "new drug;" so far FDA has presented little, if any, evidence to combat that allegation.

*The Issue of Injunctive Relief*

On August 14, 1975, this Court enjoined defendants from preventing the use of laetrile by the then named plaintiff in this action. Such injunction was subsequently upheld on appeal, the Circuit Court determining that the issues raised by FDA's classification of laetrile as a "new drug" were sufficiently "substantial, difficult and doubtful so as to support the granting of a preliminary injunction," and the case was remanded for further proceedings. *Rutherford v. United States*, (10th Cir. 1976), *supra*, at 1142. Thus the issue of this Court's jurisdiction to enter such an injunction has already been disposed of on appeal.

On January 4, 1977, this Court entered an Order remanding the case to FDA for de-

---

1.  "The FDA argues that a drug offered for use in a life-threatening disease that is not 'effective' is thereby not 'safe' either. Thus even under the pre-1962 law Laetrile would have to satisfy effectiveness criteria. This argument may lose its force in the case of a terminally-ill patient or in the case of a patient suffering from a disease for which there are in fact no 'effective' remedies." *Rutherford v. United States* (10th Cir. 1976) *supra*, note 5 at 1142.

velopment of a proper administrative record, and directing that "until such time as the FDA proffers to the Court an administrative record containing substantial evidence in support of its determination that laetrile is a 'new drug' under the terms of the relevant statute, such determination is held to be without force or effect as to the plaintiff class in this case, and defendant FDA is hereby enjoined and restrained from preventing plaintiffs' importation or interstate transportation of laetrile for purposes of their own consumption under the terms of the Food and Drug Act, including § 505(a) of the Act, 21 U.S.C. § 355(a)."

■ Generally, if the questions presented in a suit for injunction are grave and difficult, and the injury to the moving party will be irreparable if the relief is denied, while the inconvenience and loss to the opposing party will be inconsiderable if the relief is obtained, the injunction should be granted. *Morton Salt Co. v. City of South Hutchinson*, 159 F.2d 897, 899 (10th Cir. 1947).

■ Plaintiff class is in danger of suffering irreparable injury if relief is postponed or denied. Any legal right they might possess to use laetrile may be of academic value if secured only at some undetermined future time. For the terminally ill the phrase "justice delayed is justice denied" contains special significance. Defendants' potential loss from the granting of injunctive relief is slight at most. Certainly defendants are charged with an important responsibility in safe-guarding the public from dangerous drugs, and they are to be commended for pursuing the task diligently. Nonetheless, the danger in the use of nontoxic but unproven cancer treatments by the public "is in their delaying or foregoing diagnosis and treatment which is generally recognized by the medical profession as beneficial and effective." *United States v. General Research Laboratories*, 397 F.Supp. 197, 199 (C.D.Calif.1975). "Where a person is terminally ill with cancer and unresponsive to other treatments, the public harm is considerably reduced." *Carnohan v. United States*, Civ. No. 77–0010–GT (S.D.Calif.1977).

In most instances in which relief in the form of a preliminary injunction is sought, the burden is upon the movant to establish by clear proof that he will probably prevail when the merits are tried, and that irreparable injury will be suffered unless injunctive relief is granted. *Penn v. San Juan Hospital, Inc.*, 528 F.2d 1181, 1185 (10th Cir. 1975); *Crowther v. Seaborg*, 415 F.2d 437 (10th Cir. 1969); *Automated Marketing Systems, Inc. v. Martin*, 467 F.2d 1181 (10th Cir. 1972). Even under this more stringent standard, injunctive relief would still lie. The record in this case discloses many indications that laetrile may well be established to have been marketed for the last twenty years or more as a cancer treatment, to have been generally regarded by most experts as "safe," even if not "effective," and thus to be exempt from "new drug" classification by virtue of the previously discussed "grandfather clause" provision. Defendants' brief contains references to the report of the Cancer Commission of the California Medical Association published in 1953, which report on its face establishes the longevity of laetrile's recognized use. While concluding that laetrile was ineffectual as a "cure" for cancer, the report generally regarded it as safe and perhaps even palliative to some degree. Interestingly, the 1976 edition of the FDA Code Regulations (21 C.F.R. 121.101(e)(2)), as well as multiple earlier editions, places amygdalin[2] on the "Generally Recognized as Safe List."

### Conclusion

Defendants adamantly urge that the use of laetrile is expensive, ineffectual and unjustifiable. Such contentions are serious and cannot be lightly regarded.

Of some significance, however, is the fact that laetrile's high cost is undoubtedly a

---

**2.** "The Court finds from the record that Laetrile, Amygdalin and Vitamin B–17 are all one in the same, and the term Laetrile will be used to represent all three." *Rutherford v. United States*, 424 F.Supp. 105 (W.D.Okla.1977).

direct consequence of its illegality in the United States; ironically, this requires traveling all the way to Mexico to enjoy its use lawfully.

This case raises questions of fundamental political and philosophical consequence. Freedom of choice necessarily includes freedom to make a wrong choice, and there is much force to the argument that matters of the type herein under discussion should be left ultimately to the discretion of the persons whose lives are directly involved.

The point can be couched in simple terms. Many intelligent and mentally competent citizens in this nation have made a deliberate decision that they would like to employ an unproven and largely unrespected treatment in an effort to comfort, if not save, lives that orthodoxy tells them have already been lost. They do so with an acute awareness of professional medicine's assessment of their choice. Their decision should be respected.

An appropriate Order will be entered herein.

### ORDER AND DECREE

Based upon the Memorandum Opinion filed herein this day,

IT IS HEREBY ORDERED that plaintiff class in the above-captioned case is certified as encompassing all "terminally ill cancer patients." The phrase "terminally ill cancer patient" refers to anyone who, in affidavit form as hereafter described, is declared by a practicing physician (M.D.) to be terminally ill.

Such affidavit shall include the following:

1.  that there is histologic evidence of a rapidly progressive malignancy in the patient possessive of a high and predictable mortality rate; and

2.  (a) that further orthodox treatment would not reasonably be expected to benefit the patient; or
    (b) that laetrile will be administered only in conjunction with established and recognized forms of cancer treatment; or

(c) that the patient has made a knowing and intelligent election to take laetrile after being fully apprised of the full range of recognized treatments available and of the fact that laetrile is considered by most cancer experts to be of no value in combatting the disease.

IT IS ALSO HEREBY ORDERED that the defendants in this action, the United States of America, its agents, agencies and instrumentalities, including, in their official capacities, Joseph A. Califano, Secretary of Health, Education and Welfare, Donald Kennedy, Commissioner of the Food and Drug Administration, and Vernon D. Acree, Commissioner of U.S. Customs Service, and their successors and agents are enjoined from impeding or preventing the importation and interstate transportation of laetrile by any members of the plaintiff class or their duly designated agents.

IT IS FURTHER ORDERED that such laetrile can be imported and utilized solely for the personal use and benefit of the plaintiff class members.

The Clerk shall send, by registered mail, a certified copy of this Order and Decree to each department administrator referred to herein.