Charles J. FRANKEL et al., Plaintiffs,

v.

WYLLIE AND THORNHILL, INC.,
et al., Defendants.

Civ. A. No. 72-C-5-C.

United States District Court,
W. D. Virginia,
Charlottesville Division.

May 5, 1972.

Stuart F. Carwile and Robert M. Musselman, Charlottesville, Va., for plaintiffs.

G. R. Humrickhouse, Williams, Mullen & Christian, Richmond, Va., and Robert P. Boyle, Boyle & Wood, and George R. St. John, and Robert M. Huff, Charlottesville, Va., for defendants.

## OPINION AND JUDGMENT

DALTON, District Judge.

The plaintiffs bring this civil action for themselves and other parties similarly situated, against defendants for violations of Sections 12(2) and 17(a) of the Securities Act of 1933 (15 U.S.C. 77*l*(2) and 15 U.S.C. 77q (a)) and Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. 78j(b)). The defendants request this court to dismiss this

suit because plaintiffs have failed to maintain a proper class action under Rule 23 of the Federal Rules of Civil Procedure.[1]

I. Rule 23. Class Actions

(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

(c) Determination by Order Whether Class Action to be Maintained; Notice; Judgment; Actions Conducted Partially as Class Actions.

(1) As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this subdivision may be conditional, and may be altered or amended before the decision on the merits.

(2) In any class action maintained under subdivision (b) (3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice shall advise each member that (A) the court will exclude him from the class if he so requests by a specified date; (B) the judgment, whether favorable or not, will include all members who do not request exclusion; and (C) any member who does not request exclusion may, if he desires, enter an appearance through his counsel.

(3) The judgment in an action maintained as a class action under subdivision (b) (1) or (b) (2), whether or not favorable to the class, shall include and describe those whom the court finds to be members of the class. The judgment in an action maintained as a class action under subdivision (b) (3), whether or not favorable to the class, shall include and specify or describe those to whom the notice provided in subdivision (c) (2) was directed, and who have not requested exclusion, and whom the court finds to be members of the class.

(4) When appropriate (A) an action may be brought or maintained as a class action with respect to particular issues, or (B) a class may be divided into subclasses and each subclass treated as a class, and the provisions of this rule shall then be construed and applied accordingly.

(d) Orders in Conduct of Actions. In the conduct of actions to which this rule applies, the court may make appropriate orders: (1) determining the course of proceedings or prescribing measures to prevent undue repetition or complication in the presentation of evidence or argument; (2) requiring, for the protection of the members of the class or otherwise for the fair conduct of the action, that notice be given in such manner as the court may direct to some or all of the members of any step in the action, or of

The facts as stated are that O'Neill Enterprises, Inc., a Virginia corporation engaged in real estate development and located in Charlottesville, Virginia, issued first lien deeds of trust real estate bonds to purchasers for a period of time prior to its adjudication as a bankrupt by this court on January 7, 1972. These bonds were sold to a class of plaintiffs composed of individuals, partnerships, trusts and corporations, by the defendants Wyllie and Thornhill, Inc., who allegedly underwrote the sale of at least $3,400,000 of the bonds to the general public. During the period covered by this action, in the fall of 1969, O'Neill Enterprises, Inc. purchased all of the outstanding stock of the Thomas Jefferson Corporation, which was merged into O'Neill Enterprises in January 1971, and whose bonds were sold to the general public. "W and T deeds of trust" were given to secure the bonds of O'Neill Enterprises, Inc. and the Thomas Jefferson Corporation, which were sold and underwritten by Wyllie and Thornhill, Inc.

The plaintiffs allege that Wyllie & Thornhill, Inc. employed means of transportation and communications in interstate commerce in making the sales and offers to sell the "W & T bonds." It is also alleged that all of the bonds of O'Neill Enterprises, Inc. and the Thomas Jefferson Corporation offered pursuant to the "W & T deed of trust" were offerings which 1) were part of a single plan of financing; 2) involved the issuance of the same class of security; 3) involved the receipt of the same type of consideration; 4) were made for the same general purpose; and 5) were made during or about the same period of time.

The plaintiffs also allege that the balance sheets of O'Neill Enterprises, used in connection with the sale of "W & T bonds" and with registration of the bond issues with the Securities Division of the State Corporation Commission of Virginia, failed to show fixed assets at fair market value and failed to state material facts necessary to make the statements not misleading. In essence, the plaintiffs claim that the balance sheets failed to disclose that O'Neill Enterprises had always operated at a loss, and as such, the balance sheets contained false, misleading and fraudulent statements of material facts. Plaintiffs also allege that the "W & T deed of trust" contained a provision for the "substitution of collateral," which could be made by the trustees alone, without notification and consent of the bondholders, which was in fact employed without their consent.

In addition, it is alleged that Wyllie & Thornhill engaged in both fraud and deceit when it made both written and oral repurchase agreements with certain W & T bondholders to repurchase "W & T bonds" from them at par plus accrued interest, without notifying all W & T bondholders of this action.

Plaintiffs further claim that the defendants used prospectuses in connection with the sales and offers of sale of the W & T bonds which were not registered with the Securities and Ex-

the proposed extent of the judgment, or of the opportunity of members to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or otherwise to come into the action; (3) imposing conditions on the representative parties or on intervenors; (4) requiring that the pleadings be amended to eliminate therefrom allegations as to representation of absent persons, and that the action proceed accordingly; (5) dealing with similar procedural matters. The orders may be combined with an order under Rule 16, and may be altered or amended as may be desirable from time to time

(e) Dismissal or Compromise. A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs. As amended Feb. 28, 1966, eff. July 1, 1966.

change Commission or the Securities Division of the State Corporation Commission of the Commonwealth of Virginia, and such prospectuses contained false, misleading and fraudulent statements of material fact, and omitted to state certain material facts.

The defendants request dismissal of this suit on the grounds that the complaint fails to allege facts which are a prerequisite to a class action. They allege that because the oral and written repurchase agreements existed only as to some purchasers, the questions of law and fact are no longer common to all the class. Defendants also assert that there were 15 separate and distinct bond issues over a period of 16 months and a prospectus relating to each issue must have affected only those purchasers buying that particular issue, not all the members of the class. Defendants allege that improper substitution of collateral on the "W & T deeds of trust" applies only to that class of purchasers of a particular bond issue, not to all members of the class. Defendants also cite potential conflict among class members over upholding or striking down repurchase agreements, and the necessary proof of reliance by purchasers upon misleading balance sheets, illegal prospectuses and alleged written and oral statements. Also mentioned by defendants is the differing liability of defendants and the varying standards and degrees of proof for each separate cause of action.

In order for plaintiff to bring a class action under Rule 23, he must first satisfy all the conditions of 23(a). He must then demonstrate that his action is appropriate under one of three subdivisions of 23(b). Here, plaintiff relies on 23(b) (3) alleging that the common issues of law and fact predominate as to all members of the class and that a class action is superior to all other ways of conducting the litigation.

■ There is no dispute that joinder of all members would be impracticable under 23(a) (1), because the apparent class plaintiff seeks to represent exceeds 650. It further appears that the plaintiffs, as representative parties, will adequately protect the interests of all class members within the meaning of Rule 23(a) (4). Defendants assert, however, that since defendants allegedly established repurchase agreements with some bondholders but not with others, a conflict will arise between those who would ask the court to enforce the agreements and those who request recision. The antagonism which would defeat the representation of the class must be as to the subject matter of the suit. First Am. Corp. v. Foster, 51 F.R.D. 248 (N.D.Ga.1970). However, where the question of basic liability can be established readily by common issues, then it is apparent that the case is appropriate for class action. Gold Strike Stamp Co. v. Christensen, 436 F.2d 791 (10th Cir. 1970). If in fact the conflict appears, and at this point that is by no means clear, it is no more than an element of the common group of operative facts. True, special handling of the claims may be required, but the differences appear to bear only upon the ultimate computation of damages, which does not justify dismissal of the suit as a class action. Kronenberg v. Hotel Governor Clinton, Inc., 41 F.R.D. 42 (S.D.N.Y.1966). Any potential rivalry among class members after the issue of liability is decided can be adequately treated since Rule 23(c) (4) gives the court the power to divide the class into appropriate subclasses or to require the members to bring individual suits for damages. Eisen v. Carlisle & Jacquelin, 391 F.2d 555 (2nd Cir. 1968). Finally, those aggrieved persons who fear that their interests will not be adequately protected by the representative plaintiffs may of course signify their exclusion from the class. Id. at 563.

■ Rule 23(a) (3) requires that the plaintiffs' claims be typical of the class. Defendants presumably argue that the individual plaintiffs' claims dif-

fer since the alleged omissions, false statements, misrepresentations and mishandling varied depending upon the particular prospectus, issue or individual purchaser. Moreover, it appears that no members, or very few, if any, of the class purchased bonds of all issues. Thus, it is argued, plaintiffs' claims are not typical of the class. Nevertheless, given the abundance of alleged violations noted infra, common to all, the court feels that it is both logical and desirable to allow the named plaintiffs to represent the class, at least with respect to the common violations. If the court should find that some distinctions must be drawn among those who purchased at different times, it is free to make use of the flexibility available to it and so important to the proper application of Rule 23. Green v. Wolf Corp., 406 F.2d 291, 299 (2d Cir. 1968) cert. den. sub nom. Troster, Singer & Co. v. Green, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969). The court may, therefore, divide the class into subclasses, as permitted by Rule 23(c) (4), in which distinctions are made between purchasers of particular issues, or it may make any other necessary orders. Rule 23(d).

■■ The critical issue is whether questions common to the class exist, Rule 23(a) (2), and if so whether or not these common questions predominate over the individual issues, as required by Rule 23(b) (3). In so deciding the court is ever mindful of the desirability of placing a liberal construction upon Rule 23(a) and, further, of the importance of the Rule as a protection for small claimants against securities fraud. See Proposed Amendments to the Rule of Civil Procedure, 39 F.R.D. 69, 103 (1966).

Plaintiffs have overcome the burden placed upon them by 23(a) (2). The financial statements (balance sheets), for example, used in connection with the sale of the "W & T bonds" failed to disclose relevant information to the bond purchasers and brokers, notably that O'Neill Enterprises has always operated at a loss. Correspondingly, the information that was contained in the statements is assertedly false and misleading. It is also claimed that each of the "W & T deeds of trust" contained a provision that, upon satisfying certain conditions, other real property could be substituted as collateral for the deeds of trust, without notification to or consent of the purchasers. The appraisal values, upon which frequent substitutions were thereafter made, were allegedly higher than the real market values of the various properties, so that the actual market value of the bonds was substantially impaired. The plaintiffs further allege that the prospectuses, drawn to promote the sale of "W & T bonds", were not registered with the Securities and Exchange Commission nor with the Securities Division of the State Corporation Commission. They contained, moreover, alleged omissions and misrepresentations of material facts which tended to mislead purchasers. At some point although the State Corporation Commission refused to register additional bond issues of O'Neill Enterprises, the defendants allegedly knowingly continued to market the bonds, without informing actual and potential buyers of the Commission's decision. The court does not wish to protract litigation unnecessarily by presenting here a detailed description of the alleged fraud of defendants. It is enough to state that there are ample grounds for the court to conclude that common questions of law and fact exist.

■ Defendants maintain that the putative misrepresentations differ in their content and that not all of the claims apply to all purchasers. Thus not only were there fifteen (15) different bond issues, but the statements and agreements, written and oral, were not made to all purchasers even as to a particular issue. This disparity, it is argued, dilutes the similarity among the claims of the actual and potential parties. Assuming that these differences

will in fact affect the merits of the claims, the court is nevertheless not persuaded that dismissal is justified. As noted earlier, the bond offerings were allegedly all part of a single plan of financing, transacted over a short period of time, designated for a unified purpose, and involving the same class of security. Notwithstanding the admitted disparities, the defendants allegedly by their acts have apparently established a consistent pattern of fraud and deceit which supercedes particular issues. This course of conduct, common to the class, in itself sufficiently presents a "common question" under Rule 23(a) (3d Cir. 1970) cert. den. sub nom., Glen (2). Kahan v. Rosenstiel, 424 F.2d 161 Alden Corp. v. Kahan, 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290; Esplin v. Hirschi, 402 F.2d 94 (10th Cir. 1968) cert. den. 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969); Northern Acceptance Trust 1065 v. AMFAC, Inc., 51 F.R. D. 487 (D. Hawaii 1971); Dolgow v. Anderson, 43 F.R.D. 472 (E.D.N.Y. 1968).

Acknowledging that individual issues do exist, the plaintiffs nevertheless contend that the common issues of law and fact predominate over the individual issues. Rule 23(b) (3). Defendants rejoin that because there were differences in the representations made and in the kinds and degrees of the purchasers' reliance thereon, which reliance they must prove in order to recover, the individual issues predominate. Encountering the same argument, the Second Circuit replied, in Green v. Wolf Corp., supra, 406 F.2d at 301:

> Carried to its [the argument's] logical end, it would negate any attempted class action under Rule 10b–5, since as the District Courts have recognized, reliance is an issue lurking in every 10b–5 action. Kronenberg v. Hotel Governor Clinton Inc., 41 F.R.D. 42, 45 (S.D.N.Y.1966). We see no sound reason why the trial court, if it determines individual reliance is an essential element of the proof, cannot order

> separate trials on that particular issue, as on the question of damages, if necessary. The effective administration of 23(b) (3) will often require the (device) of split trials. (citation omitted)

Without considering the merits of the plaintiffs' cause, the court at this time rejects the defendants' argument.

■ As required by Rule 23(b) (3), the court also finds that the class action is "superior to other available methods for the fair and efficient adjudication of the controversy." The benefits of the device are obvious. Many small investors who would otherwise be unaware of the suit, or, so aware, would unknowingly be precluded by time from bringing suit, will have notice of the proceedings Rule 23(c) (2). Comparable to other means, litigation may be concluded in the shortest time with a class action, at the least expenditure in money and work to all parties, assuming that all or most parties would in some form bring suit. Additionally, the final judgment of the common issues, binding upon all, will be uniform, therefore efficient, and presumably just. Underlying these advantages is the availability of the previously noted flexible procedures by which the court can minimize individual problems as they arise.

Conversely, to require the aggrieved persons to proceed independently, or even to intervene in other suits, is particularly undesirable. For many claimants the amounts at stake are so small and the costs so high as to render impractical individual prosecution of suit. The court is not dissuaded by the fact that pending in the state court is litigation dealing with the subject matter of this suit. There the number of member plaintiffs and the amounts in question comprise a small percentage of the numbers and sums involved here. Only if those factors had proportionately greater magnitude, and if that litigation closely approached conclusion, would this

court attach great weight to those proceedings.

 Finally, the defendants argue that this suit should not be maintained as a class action because there is a distinction among the defendants, with differing degrees of liability. However, the allegations by plaintiffs in the three causes of action are that this is a conspiracy, with violations of three sections of the securities laws. (Sections 12(2) and 17(a) of the Securities Act of 1933 and Section 10(b) of the Securities and Exchange Act of 1934). As such, there are common questions of law and fact, and although remedies may vary according to differing degrees of liability, the common questions presented sufficiently predominate to satisfy the first prerequisite for a 23(b) (3) type of class action.

Whether or not this suit may be maintained as a class action is to some extent within the court's discretion. Gold Strike Stamp Co. v. Christensen, supra. In so exercising, the court is aware of the liberal interpretation given to Rule 23. E.g., Green v. Wolf Corp., supra; Esplin v. Hirschi, supra; Northern Acceptance Trust 1065 v. AMFAC, Inc., supra. *Esplin* established the guiding principle which a court should follow in considering whether or not in a close case the suit should proceed as a class action:

> It cannot be denied that the resolution of the class action issue in suits of this type (securities fraud) places an onerous burden on the trial court. But if there is to be an error made, let it be in favor and not against the maintenance of the class action, for it is always subject to modification should later developments during the course of the trial so require. Id. 402 F.2d at 99.

The course intends to follow this principle favoring a class action in the present case.

In sum the court holds that this is a proper case for a class action. Without elaboration and in the absence of dispute, the court further finds that the plaintiffs' provisions for notice to members of the class complies with the requirements of Rule 23(c) (2). The class, however, shall not include those parties who have brought suit in any other court.

Accordingly, it is ordered and adjudged that the plaintiffs' motion to approve maintenance of a class action, together with its satisfactory notice provision, is granted, and the defendants' motion to dismiss is denied.

