**WEST INDIES INVESTMENT CO., et al., Plaintiffs**

v.

**HESS OIL VIRGIN ISLANDS CORPORATION, Defendant & Third-Party Plaintiff**

v.

**ATLANTIC GULF & PACIFIC COMPANY, Third-Party Defendant**

Civil No. 566-1972

District Court of the Virgin Islands

Div. of St. Croix

July 16, 1975

GRUNERT, STOUT, HYMES & MAYER, ESQS. (JOHN R. MAYER, of counsel), St. Thomas, V.I., *for plaintiffs*

BIRCH, DE JONGH & FARRELLY, ESQS. (ALEXANDER A. FARRELLY, of counsel), St. Thomas, V.I., *for defendant and third-party plaintiff*

CHRISTIAN, *Chief Judge*

### MEMORANDUM OPINION

Before the Court is a motion, pursuant to F.R.C.P. Rule 23(c)(1), to certify whether this suit is to be maintained as a class action. In order to make the specific findings required by the Rule, it is necessary to briefly summarize the underlying facts.

This suit is composed of two causes of action. The first, brought by the landowner, West Indies Investment Co., is not involved in this motion. The second, which is, is brought by the two named plaintiffs on behalf of themselves and others similarly situated. In June 1971, as a result of an alleged collision between an oil tanker and a dredge, an oil spill occurred off the shore of St. Croix, which allegedly has resulted in permanent damage to a public beach and recreational area known as Sandy Point. Plaintiffs allege that by virtue of their "inherent interest in the use, maintenance and protection of the beaches of St. Croix," held in common with all residents of the island, they have been injured by the spoilation of Sandy Point, and seek money damages to compensate them for their loss. They have moved for the court to certify as a class, for the

purposes of this action, all residents of the Virgin Islands or, in the alternative, all residents of St. Croix.

Rule 23 is specific in its two-fold requirements for bringing a class action. First, all the prerequisites set out in Rule 23(a) must be met. In addition to that, the Court must find that the action fits within one of the categories of class actions maintainable which are enumerated in Rule 23(b).

We are convinced that all of the prerequisites have been met. If, as we deem reasonable, the purported class is limited to all residents of St. Croix, it is obvious that the class is so numerous that joinder of all members is impracticable. 23(a)(1). Similarly, there are common questions of law and fact (23(a)(2)), the claims of the representative parties are typical of the class (23(a)(3)), and the representatives will fairly and adequately protect the interests of the class (23(a)(4)).[1]

We further believe, at least for threshold purposes, that this action is one which could be maintainable under the first provision of Rule 23(b)(3), in that questions of law or fact common to the members of the class predominate over any questions affecting only individual members.

It is clear that, in terms of the liability of the defendants to the plaintiffs, the questions of law and fact are identical. The proof of the existence and causation of the oil spill, and the resultant damage to the beach, is the same no matter how many plaintiffs are involved. It is only in arriving at the issue and determination of damages that problems concerning the manageability of the class arise. Rule 23(b)(3)(D). Once that issue has been reached, individual proof may be required to determine the extent to which each member of the class has suffered. This no doubt would conceivably entail individual testimony as to

[1] In this regard, some of the questions of law applicable to the class must of necessity differ sharply from those of the individual plaintiff landowner.

the extent, if any, that said member utilized the beaches at Sandy Point prior to the oil spill as against his present enjoyment. Despite the major complications which are naturally to be anticipated in this area, this Court finds support for nonetheless certifying the class from cases in other jurisdictions in which the size of the class presented similar problems in awarding damages. In Re Motor Vehicle Air Pollution Control Equipment, 52 F.R.D. 398 (C.D. Cal. 1970), concerned an action brought by several classes of plaintiffs who alleged that they had sustained injury from automobile pollution. There, in certifying as proper classes, inter alia, all the citizens[2] of Illinois, New Jersey, New Mexico, New York, Connecticut, California, and Wisconsin, and all the farmers in the United States, the court said:

> Although there may be some differences in the effect of smog on various crops or the fauna and flora of a state, political subdivision, public corporation, or public authority, the pleadings as they now stand do allege a class properly represented . . . with respect to common issues of law and fact which predominate over questions affecting only individual members.

52 F.R.D. at 404. Many cases have held that as long as *liability;* can be established by common proof, a class action will not be defeated merely because of the individual nature of the proof of damages. See, e.g., Albertson Inc. v. Amalgamated Sugar Co., 62 F.R.D. 43 (D.C. Utah 1973); Cohen v. District of Columbia Nat. Bank, 59 F.R.D. 84 (D.C.D.C. 1972); Partain v. First Nat. Bank of Montgomery, 59 F.R.D. 56 (D.C. Ala. 1973); Frankel v. Wyllie & Thornhill, Inc., 55 F.R.D. 330 (D.C. Va. 1972); Herbst v. Able, 47 F.R.D. 11 (S.D.N.Y. 1969), amended on other grounds 49 F.R.D. 286. The courts and commentators have been virtually unanimous in both the recognition of the

---

[2] Note that the class was of all the citizens of those states, *not* the governmental entity on their behalf.

vast complexity of the apportionment of damages, and the determination to overcome those difficulties if at all possible. Wright and Miller note that

As in other contexts, environmental actions brought under Rule 23(b)(3) often will present difficulties in establishing damages, especially in the apportionment of damages from a collective award to individual class members.

\*        \*        \*

To be sure, if substantial numbers of these cases [environmental protection] materialize, they will present problems of enormous difficulty. But we are becoming better able to compute the social cost of pollution, and federal courts, when asked to weigh the merits of an environmental claim are obliged to undertake the job of balancing the economic and other benefits to the community of a given activity or course of conduct against the possible injury to the environment.

7A Wright & Miller, Federal Practice and Procedure § 1782 (pp. 113–14).

There is a second requirement contained in Rule 23(b)(3), however, which is that a class action must be superior to other available methods for the fair and efficient adjudication of the controversy. Regarding this requirement, a recent case in this circuit suggests that caution should be exercised in determining class certification at this time and on these facts. In Katz v. Carte Blanche Corporation, 496 F.2d 747 (3rd Cir. 1974) U.S. cert. den., the Third Circuit sitting en banc reversed both the district court and the original three judge circuit panel, which had held that certification of the suit as a 23(b)(3) class action was not an abuse of discretion. Writing for the majority in the en banc opinion, Judge Gibbons said:

We think the Blonder-Tongue [Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313 (1971)] decision requires that a new look be taken at the alternative of a test case in lieu of an early class action determination.

496 F.2d at 760. Katz involved a purported class action against Carte Blanche Corporation, alleging that certain of the finance charges assessed against some of its members violated the Truth in Lending Act[3] (hereinafter TILA). The district court, at 53 F.R.D. 539 (W.D. Pa. 1971), had held that the case should proceed through the determination of liability as a class action, and then, afterwards the class could be weeded out to include only those who had used their credit cards for consumer transactions, which was the only group of purchasers protected by the TILA. In reversing that certification, the appellate court discussed in great detail the relative effect of res judicata versus stare decisis, and the practicability and effect of using a test case. The discussion was couched in terms of the "superiority" of the class action format requirement of Rule 23.

> The district court points out that if Katz' case went forward alone it would not be binding upon anyone other than Mr. Katz. That is only partly true. Judgment against Katz would not protect Carte Blanche against other class members, but judgment for Katz would bind Carte Blanche in suits by other class members. In making its superiority determination the district court overlooked that factor, and disregarded the fact that Carte Blanche was content to take its chances on stare decisis rather than res judicata.

496 F.2d at 758–59. The Court's analysis examined the superiority vel non of the class action format from the points of view of the judicial system, the potential class members, the present plaintiff, the attorneys for the litigants, the public at large, and the defendant. As to each of these groups, it concluded that great economy of money any time could be realized, with no discernable prejudice to anyone, by having the individual plaintiff first prove a violation of the TILA and then, that accomplished, move to certify the class. The court explicitly opined that

---

[3] 15 U.S.C. §§ 1601–1681t.

"[a]s soon as practicable" must mean as soon as practicable in the light of the relevant rule 23(b)(3) factors of predominance and superiority .... As soon as practicable does not necessarily mean at the outset of the lawsuit.

496 F.2d at 758.[4] From this the majority reasoned that it could be practicable to defer certification in some instances until after defendant's violation was established, and to then "expand the class."

There are two elements in Katz which distinguish it from the case at bar. First, there was much concern expressed by the court that if all the member plaintiffs of the class were involved in the liability aspect of the case, Carte Blanche would be obliged to file compulsory counterclaims against many of them who were behind or in default in their payments, or otherwise be forever barred from collection. It is also noteworthy that one of the elements of the substantive violation was that the plaintiff be a consumer purchaser, which rendered making a preliminary delineation of the class exceedingly difficult. By contrast, in the case at bar if plaintiffs' cause of action succeeds, the violation of the right to use the beach would apply to all residents in St. Croix, and the relevance of their previous and habitual use of the beach facilities goes only to their entitlement to money damages, not to their substantive right of recovery.

Moreover, even if the class were to be further limited to those residents of St. Croix who, through preference or location, customarily used the beach at Sandy Point, that again would go only to eligibility in the class, rather than to the actual liability of the defendant. We are in full philosophical agreement with Chief Judge Seitz' dissenting opinion in Katz, where he stated that "so long as *the class representative is a bona fide consumer user of the card,* the use each purported class member makes of his card need

---

[4] But note Chief Judge Seitz' dissent, in which he strenuously disagrees with this interpretation. 496 F.2d at 764, 766.

90

not be determined before a determination on the controlling legal issues. The district court can . . . make its class determination at any time during the proceedings." 496 F.2d at 768 (Seitz, C.J., dissenting) (emphasis supplied).

On the other hand, the Katz procedure would simplify the present action considerably. An additional concern voiced by Judge Gibbons was the large expense which the requisite notice to all members would entail. The notice problem is significant here as well, where the proposed class would include every resident of the island of St. Croix. Because Rule 23 requires personal notice of the pendency of the action to all the members who reasonably can be identified, plaintiff here would be required to send notice by first class mail to every name in the telephone book as well as those on the voting registration list of the island, except to the extent that they overlap. Moreover, should such measures fail to reach the entire populace, some sort of media publication would also be necessary. If we were to delay certification of the class until after a decision on the merits of plaintiffs' claim, not only would this huge expense be obviated if they did not prevail, but the notice would be more meaningful at that point if they did:

> If Katz establishes the violation they [the class members] can be afforded the same opting out option, but the notice will advise them that there is a judgment establishing violation, and their decision will be more informed than if the notice was sent early in the proceedings.

496 F.2d at 760.

As also was recognized in Katz, failure to certify at this stage in the proceedings would not expose the potential class members to the running of the statute of limitations, as the Supreme Court has held that the filing of a class action complaint tolls the running of the statute of

limitations for the entire class. American Pipe & Construction Co. v. Utah, 414 U.S. 538 (1974).

Despite the conceptual differences between the Katz majority and the several dissents, and not overlooking whatever difficulties we may harbor concerning the underlying reasoning relied on in that case, we find it a convenient device for this particular case. Although we venture no opinion as to the plaintiff's likelihood of success, or vice versa, in determining the propriety of class certification, it is clear that by following the procedure we here adopt, plaintiffs will be spared exposure to the exorbitant cost of notice, sure to be disproportionate to their possible individual recoveries, until success is no longer a gamble. It is possible that this is the greatest advantage of the Katz procedure, the fact that it makes notice to the class members unnecessary until the representative member has succeeded in its claim. For this reason, on the strength of Katz, we defer certifying class in this action until such time as the plaintiffs have established, by trial, that the defendants have in fact breached some duty owed to them, individually and as representative class members. As we are deferring, rather than denying certification, defendant's and third-party defendant's motions to dismiss the class action aspects of the case are denied.