## Johnson v. Rohm & Haas Co.

*Steven A. Angstreich,* for plaintiffs.
*John G. Harkins Jr.* for defendant.

HILL, *J.,* January 6, 1986 — This matter concerns plaintiffs' motion for class certification pursuant to Pa.R.C.P. 1707(a). Plaintiffs' cause of action arises from the alleged escape of toxic chemicals from a landfill maintained by defendant in the Bristol-Croydon area of Pennsylvania. Plaintiffs claim to represent the class of property owners in the vicinity of the landfill whose water, land and environment have been contaminated by chemical waste. Compensation is sought for the devaluation of real property, and claims for personal injury have been expressly disclaimed.

Pleadings have been closed and the motion for certification argued. In consideration of the arguments, briefs, evidence and pleadings, the court determines as follows.

## FINDINGS OF FACT

1. From 1952 through 1975, defendant operated an industrial landfill in Bristol Township, Bucks County, Pa. (Admitted in paragraphs 4, 8 of defendant's answer to complaint).

2. Liquid and solid chemical waste produced by defendant's manufacturing plants in Bristol, Croydon and Philadelphia, Pa., were deposited in the Bristol landfill (Admitted in paragraphs 4, 8 of defendant's answer to complaint).

3. Plaintiffs reside at 922 Orchard Avenue in Croydon, Pa. (Paragraph 1 of plaintiffs' answers to defendant's first set of interrogatories).

4. Plaintiffs' well water was tested for contamination by Quality Control Inc. on November 4, 1983, the Bucks County Dept. of Health on February 1, 1984, Aqua Pure Labs Inc. on May 1, 1984, and by BCM Eastern Inc. on August 3, 1984. The first three tests were conducted at plaintiffs' request and the last at defendant's (Paragraphs 2, 3(f) of plaintiffs' answers to defendant's first set of interrogatories).

5. The water evaluation by the Bucks County Health Dept. stated that plaintiffs' well water contained 100 parts per billion (ppb) tetrachloroethylene (TCE), and that 75 ppb TCE was the maximum level at which long-term consumption would not cause bodily injury. The evaluation recommended that TCE concentrations be brought below 4.5 ppb pursuant to EPA safety standards (Plaintiffs' answers to defendant's first set of interrogatories, attached document no. 2 (Bucks County Health Dept. Water Evaluation)).

6. The Bucks County water report asserted that consumption of 2 liters of water containing 4.5 ppb TCE over 70 years would increase the cancer risk to one in one million (Plaintiffs' answers to defendant's first set of interrogatories, attached document no. 2 (Bucks County Health Dept. Water Evaluation)).

7. Plaintiffs were advised to boil drinking water, install a carbon filter system, or buy bottled water as a corrective measure (Plaintiffs' answers to defendant's first set of interrogatories, attached document no. 2 (Bucks County Health Dept. Water Evaluation)).

8. Water evaluations by Aqua Pure Laboratories, Quality Control Laboratories, and BCM stated TCE levels at 122, 123 and 3.1 ppb respectively (Plaintiffs' answers to defendant's first set of interrogatories, attached documents no. 1, no. 3, no.

4 (Water evaluations of Aqua Pure, Quality Control and BCM Laboratories)).

9. Counsel for defendant stated that tests conducted by BCM Laboratories of 13 or 14 wells in the community evidenced the presence of TCE (Hearing, June 11, 1985, at 24).

10. Defendant submitted a report issued by the Bucks County Dept. of Health to a U.S. House of Representatives committee which asserted that public and private water supplies throughout Bucks County were contaminated by TCE (Defendant's brief in support of answer to plaintiffs' motion for class-action determination, exhibit D).

11. The above report stated that industrial waste, septic tanks and consumer products such as cleaning solvents were probable TCE sources (Defendant's brief in support of answer to plaintiffs' motion for class action determination, exhibit D).

12. In 1983, defendant conducted a $2 million study through BCM Laboratories to determine whether chemicals were escaping from the landfill. The study concluded that seepage was occurring, but in a direction away from the community, towards Hog Run Creek which empties into the Delaware River (Defendant's brief in support of motion for protective order, exhibit H; hearing, June 11, 1985, at 22-23).

13. Plaintiffs allege that 11 hazardous chemicals are present in the landfill: benzene, vinal chloride, lead, cadmium, acrylonitrile, bis (chloromethyl) ether (BCME), toluene, tetrachloroethylene (TCE), methyl methacrylate, ethyl acrylate, and dioxin (Amended complaint, paragraphs 13, 14).

14. Defendant admits that some lead dross was deposited in the landfill, and that benzene, cadmium, acrylonitrile, toluene, methly methacrylate, and ethyl acrylate are present as low-level impurities of

other chemicals (Admitted in paragraph 12 of defendant's answer to complaint).

15. Plaintiffs were unable to finance extensive testing of their water and had to settle for "routine" testing which did not apprise them of all chemicals present (Brief in support of plaintiffs' cross-motion to defendant's motion for protective order and plaintiffs' cross-motion to compel production of documents, exhibit I; hearing, June 11, 1985, at 33-34).

16. Plaintiffs' well water was submitted to extensive testing by BCM Laboratories, at defendant's expense, but no chemical except TCE was found in traceable amounts (Plaintiffs' answers to defendant's first set of interrogatories, attached document no. 4 (Water evaluation of BCM Laboratories)).

17. The only injury supported by evidence is mild TCE contamination of plaintiffs' well water.

18. At the hearing defense counsel stated by way of argument that TCE was present in other wells in the community besides the one owned by plaintiffs, but this statement was in the context of an argument that TCE was present in private and public water supplies throughout Bucks County and that among its suspected sources were septic tanks and home cleaning solvents, as well as industry.

19. Other than this statement (referred to in paragraph 18), there was no suggestion which was supported by any evidence that other wells in the community were contaminated by TCE. Apart from actual evidence which was altogether lacking, no support for the presence of TCE in other wells can be drawn from admissions in the answer to the complaint or from the answers to interrogatories and documents attached thereto. Accordingly, the court cannot find that TCE was or is present in other wells in the community in addition to being present in plaintiffs' well.

20. There is no evidence or indication that any other hazardous chemical was or is present in plaintiffs' well water or that of any other property owners in the community.

21. There is no evidence that plaintiffs or other property owners have suffered any other damages.

22. There is no evidence that property owners in the area have suffered a common injury.

23. There is no indication that defendant is the source of a common injury.

24. Plaintiffs have chosen to conduct the certification hearing on the basis of admissions in the answer to the complaint, plaintiffs' own answers to defendant's interrogatories, and documents attached to answers to interrogatories. In order to give plaintiffs the benefit of every doubt, the court has accepted this form of evidence from plaintiffs despite the fact that defendant might well have had a proper basis for objection to such proof.

25. Plaintiffs did not object to the use by defendant at the hearing of the report issued by the Bucks County Dept. of Health to the U.S. House of Representatives Committee or the use by defendant of its own study (Findings of fact 10 and 12).

## CONCLUSIONS OF LAW

1. It cannot be concluded that there are common questions of law or fact.

2. It cannot be concluded that plaintiffs' claims are typical of those of the class.

3. It cannot be concluded that plaintiffs are adequate class representatives.

4. It cannot be concluded that a class action is a fair and efficient method to adjudicate this action.

5. Whether plaintiffs' class is sufficiently "numerous" to make joinder of all members "impracticable" as required by Pa.R.C.P. 1702(1) is moot be-

cause of the court's conclusions of law in paragraphs 1-4 hereof.

6. Plaintiffs have failed to evidence satisfaction of at least 4 of the 5 class-action requirements of Pa.R.C.P. 1702 and, therefore, a class action cannot be certified.

## DISCUSSION

The prerequisites for class certification are established by rule 1702 of the Pennsylvania Rules of Civil Procedure. Rule 1702 provides as follows:

"Rule 1702. Prerequisites to a Class Action

"One or more members of a class may sue or be sued as representative parties on behalf of all members in a class action only if

1. the class is so numerous that joinder of all members is impracticable;

2. there are questions of law or fact common to the class;

3. the claims or defenses of the representative parties are typical of the claims or defenses of the class;

4. the representative parties will fairly and adequately assert and protect the interests of the class under the criteria set forth in rule 1709, and;

5. a class action provides a fair and efficient method for adjudication of the controversy under the criteria set forth in rule 1708."

The general policy in Pennsylvania is that decisions to certify class actions should be liberally made. *Janicik v. Prudential Insurance Co. of America,* 305 Pa. Super. 120, 451 A.2d 451 (1982); *Bell v. Beneficial Consumer Discount Co.,* 241 Pa. Super. 192, 360 A.2d 681 (1976). In proving the rule 1702 requirements, the class proponent need not affirmatively show facts establishing each of the five criteria. Where the issue of certification is unclear, the

class proponent should be given the benefit of doubt. *Janicik v. Prudential Insurance Co. of America,* supra. See *Esplin v. Hirschi,* 402 F.2d 94 (10th Cir. 1068).

The policy favoring liberal certification decisions stems from the trial court's extensive power to protect absent class members and insure fair and efficient adjudication of claims. *Janicik v. Prudential Insurance Co. of America,* supra. See Pa.R.C.P. 1710 (subclasses and limiting issues); 1713 (conduct of actions); 1714 (approving settlements); 1716 (approving counsel fees). Certification may be altered, modified or revoked if later developments reveal that not all of the certification prerequisites have been satisfied. Pa.R.C.P. 1710, 1711; *OAS v. Commonwealth,* 8 Pa. Commw. 118, 301 A.2d 93 (1973).

At the class-certification hearing, the class proponent must, however, present evidence of underlying facts from which the court can conclude that the five certification requirements are met. Although plaintiff is entitled to the benefit of doubt, this does not mean that the need to present evidence supporting the five certification requirements is eliminated. More than mere conjecture and conclusory allegations are required. *Luitweiler v. Northchester Corp.,* 456 Pa. 530, 319 A.2d 899 (1974); *Janicik v. Prudential Insurance Co. of America,* supra; *Valentine v. Howlett,* 528 F.2d 975 (7th Cir. 1976); *Rosin v. Southern Union Gas Co.,* 472 F.2d 707 (10th Cir. 1973). Well-pleaded class-action allegations may be considered as evidence if admitted by the class opponent. Pa.R.C.P. 1706; *Janicik v. Prudential Insurance Co. of America,* supra.

Furthermore, in determining the certification issue, the court must take care to avoid a scrutiny of the merits. Whether a cause of action has been stat-

ed or whether the claim is meritorious are questions irrelevant to class determination. *Pincus v. Mutual Assurance Co.,* 457 Pa. 94, 321 A.2d 906 (1974); *Piltzer v. Independent Federal Savings and Loan Association,* 456 Pa. 402, 319 A.2d 677 (1974).

In mass tort actions, the general obstacle to class certification is determining the amount of damages, which requires case-by-case consideration. Otherwise, it is usually not difficult to certify a class on the issue of liability. Many courts, therefore, bifurcate class-action proceedings and have a single trial on liability followed by individual damage hearings. See *Janicik v. Prudential Insurance Co. of America,* supra; *Floyd v. Philadelphia* 8 D.&C. 3d 380 (1978); *Cipriani v. Sun Pipe Line Co.,* Civil No. 83-03558-09-5 (C.P. Bucks Co. February 21, 1985); *City of New York v. General Motors Corp.,* 60 F.R.D. 393 (D.C.S.D.N.Y. 1973); *Frankel v. Wyllie and Thornhill Inc.,* 55 F.R.D. 330 (D.C.W.D.Va. 1972).

Instantly, plaintiffs allege that residents in the area of defendant's landfill have suffered loss of property value due to the contamination of the environment by toxic chemicals. Although plaintiffs' bare allegations suggest a common question of liability, these allegations are not supported by evidence or even by admission to allegations in the complaint, plaintiffs' own answers to defendant's interrogatories, or the documents referred to by plaintiffs over the objections of defendant. At the hearing plaintiffs contended that they could not afford to conduct a survey. In fact, they did not even make a spot check. The only demonstration of injury to anyone is mild TCE contamination of plaintiffs' well water.

Certification of a class action on the issue of liability requires some evidence of a causal link between

a class injury and the conduct of the party opponent. See *Cipriani v. Sun, Pipe Line Co.,* supra; *State of Alabama v. Blue Bird Body Co.,* 573 F.2d 309 (5th Cir. 1978). The facts of successful class-certification motions consistently bear out this proposition.

In *Cipriani v. Sun Pipe Line Co.,* supra, an underground petroleum pipeline was ruptured during an excavation, causing hydrocarbon vapors to seep into area houses and well water. The court expressly stated its confidence that ensuing minor ailments and diminished property values could be connected with the accident. Similarly, in *Floyd v. Philadelphia,* supra, there was no problem linking minor physical injuries common to chlorine gas exposure with the leak of chlorine gas from a Philadelphia water-treatment facility. Both cases involved widespread injuries typical of the unmistakable presence of noxious substances.

Cases from other jurisdictions provide further support. In *McCastle v. Rollins Environmental Services of Louisiana,* _____ La. _____ , 456 So.2d 612 (1984), residents adjoining a hazardous waste disposal facility were certified as a class on the issue of liability for minor physical injuries caused by fumes from burning waste. The burning had occurred on specific dates, and complaints of headaches, breathing difficulties and tearing eyes were readily identifiable with the class opponent's conduct.

In *Oakwood Homeowners Association v. Ford Motor Co.,* 77 Mich. App. 197, 258 N.W.2d 475 (1977), residents of a neighborhood within close proximity of four industrial plants were certified as a spurious class on the liability of defendants for damage caused by air pollution. Although there were admittedly extreme variations in personal-damage

claims subject to individual defenses, there was clear injury to the neighborhood as a whole from air pollution which overshadowed the complexities posed by personal damages.

Also relevant is *Ouellette v. International Paper Co.*, 86 F.R.D. 476 (1980), in which a class of lakeshore property owners was certified on the issue of a paper company's liability for property damage caused by the pollution of Lake Champlain. The court emphasized that pollution of the lake would uniformly affect shoreline property values because the lake was a common recreation area.

Other cases of note are *American Trading and Production Corp. v. Fischbach & Moore Inc.*, 47 F.R.D. 155 (1969), where exhibitors at a national housewares convention were certified as a class on the issue of liability for exhibits destroyed by fire, and *Hernandez v. Motor Vessel Skyward,* 61 F.R.D. 558 (1974) where cruise ship passengers were certified as a class on the issue of liability for injuries caused from food poisoning. Like the other cases, both demonstrate a single course of conduct easily identified with class injuries.

The evidence presented by plaintiffs fails to suggest that any property other than their own has been contaminated. Defendant has indicated that TCE has been found in 13 or 14 other wells, but no mention of the concentrations of the chemical was stated. Moreover, the statement by defense counsel at the hearing that TCE was present in other areas of the community than plaintiffs' well was in the context of an argument that TCE was present in private and public water supplies throughout Bucks County, and that among its suspected sources were septic tanks and home cleaning solvents, as well as industry.

Conjecture that there is TCE in the water supplies of property owners other than plaintiffs and that it may have been caused by defendant is not enough. Plaintiffs have not presented facts such as those in *Ouellette v. International Paper Co.*, supra, from which the court could reasonably infer that the geography of a lake was such that pollution of its water would uniformly affect shoreline property, and that the devaluation of shoreline property could be attributable to no other source than the pollution of the lake.

Instantly, the court does not know whether underground water connects area residents with the landfill so that proof of liability to one resident would be proof of liability to all. In fact, the only testing which was conducted, a $2 million study of the landfill seepage, found that chemical leaking was away from the community.

Furthermore, the absence of evidence that any property in the area including plaintiffs' well were contaminated by any of the other toxic chemicals allegedly present in defendant's landfill sheds doubt on defendant's landfill as a source of the TCE in plaintiffs' well since it is reasonable to infer that these other chemicals would have leaked through the soil with the TCE.[1]

For these reasons the court cannot conclude that the suggested class members are similarly situated with respect to defendant. Absent such evidence this court cannot find that plaintiffs' claims are typical of those of the class members so that plaintiffs

---

1. Although plaintiffs could not afford to conduct testing for chemicals other than TCE, defendant conducted such testing through BCM Laboratories which concluded that no chemical but TCE was present in plaintiffs' well in traceable amounts.

are adequate class representatives. Similarly, it cannot be determined whether a class action would be a fair and efficient method of adjudication.[2]

Plaintiffs have attempted to obtain class certification on the strength of admissions, their own answers to interrogatories, certain documents, and evaluations of their well water. None of this information sufficiently addresses whether there was, in fact, damage to other property owners in the area or the source of such injuries.

It was plaintiffs' burden to present sufficient evidence for the purpose of obtaining class-action certification. Plaintiffs' complaint that such evidence can be obtained only by an expenditure of funds is not an adequate response to plaintiffs' failure to meet this requirement nor should the court shortcut proper procedures because some costs may be involved.

Plaintiffs' assertion that evidence provided by certain testing pertains to the merits of the case and is not necessary to prove the class action allegations is without merit.

In a class-certification decision, the court must determine whether there is a sufficient connection between a series of claims to justify holding defendant liable to the entire class based on proceedings involving only a few members of the group. On the other hand, a decision on the merits involves the culpability of defendant for the injury inflicted on the class, a different issue.

Instantly, plaintiffs are not required to prove defendant's culpability for injuries inflicted on area residents, but only to furnish a reasonable amount

---

2. Whether the class is sufficiently numerous so as to effectively preclude a joinder of all the claimants as required by rule 1702 is moot considering the other problems in this case.

of evidence from which it can be inferred that injuries from a common source have, in fact, been inflicted on area property owners. This plaintiffs have failed to do.

Accordingly, plaintiffs' motion for class certification must be dismissed.

### ORDER

And now, this January 6, 1986, upon consideration of all testimony, depositions, admissions and other evidence relevant to plaintiffs' class-action allegations, pursuant to Pa.R.C.P. 1707, it is hereby ordered and decreed that plaintiffs' motion for class-action determination is denied.