See also 155 F.R.D. 678.

**Gregory McEWEN and Larry Parker, Plaintiffs,**

v.

**DIGITRAN SYSTEMS, INC.; Digitran, Inc.; Donald G. Gallent; Loretta P. Gallent; Harris G. Leroy, III, Chris S. Coray; James R. Bryan; and Grant Thornton, Defendants.**

Civ. No. 93–C–728G.

United States District Court, D. Utah, Central Division.

Dec. 21, 1994.

Patricia A. Bloodgood, Earl F. Kyle, IV (on brief) of Schatz Paquin Lockridge Grindal & Holstein, David W. Scofield of Parsons, Davies, Kinghorn & Peters, and Blake Harper of Millberg Weiss Bershad Hynes & Lerach, for plaintiffs.

Gary N. Anderson of Hillyard, Anderson & Olsen, for defendants Digitran Systems, Inc. and Digitran, Inc.

David R. King of Kruse, Landa & Maycock, for defendant Loretta P. Gallent.

Gregory Skabelund, for defendants Harris G. Leroy, III and Chris S. Coray.

Wallace T. Boyack of Brown, Larson, Jenkins & Halliday, for defendant James R. Bryan.

Francis M. Wikstrom and Kent O. Roche of Parsons Behle & Latimer, for defendant Grant Thornton.

Robert W. Gutke, for defendant Donald G. Gallent.

## ORDER OF CLASS CERTIFICATION

### J. THOMAS GREENE, District Judge.

This matter came before the Court on November 1, 1994, for a hearing on plaintiffs' Gregory McEwen and Larry Parker Motion for Entry of Class Certification Order and For an Order Directing Class Certification pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure and Defendant Grant Thornton's Motion to Bifurcate Action, or in the Alternative, to Require Class Members to Submit Proofs of Claim.

Plaintiffs were represented by Patricia A. Bloodgood of Schatz Paquin Lockridge Grindal & Holstein, David W. Scofield of Parsons, Davies, Kinghorn & Peters, and Blake Harper of the Millberg Weiss Bershad Hynes & Lerach. Defendants Digitran Systems, Inc. and Digitran, Inc. were represented by Gary N. Anderson of Hillyard, Anderson & Olsen. Defendant Loretta P. Gallent was represented by David R. King of Kruse, Landa & Maycock. Defendants Harris G. Leroy, III and Chris S. Coray were represented by Gregory Skabelund. Defendant James R. Bryan was represented by Wallace T. Boyack of Brown, Larson, Jenkins & Halliday. Defendant Grant Thornton was represented by Francis M. Wikstrom and Kent O. Roche of Parsons Behle & Latimer. Defendant Donald G. Gallent was represented by Robert W. Gutke.

After considering the oral arguments of counsel and the extensive memoranda and documentation on file, the Court renders its Memorandum Decision and Order.

### FACTS

This action involves alleged violations of § 10(b) and Rule 10b–5 of the Securities Exchange Act of 1934, § 12(2) of the Securities Act of 1933, and allegations of common law fraud, negligent misrepresentation, and negligence arising out of representations made in Digitran's financial statements. Plaintiffs claim that the financial statements contained material misstatements, causing Digitran's stock to decrease in value when this information came to light.

Plaintiffs Larry Parker and Gregory McEwen (hereinafter collectively referred to as "Plaintiffs") are residents of Kentucky and Indiana, respectively. Both purchased Digitran common stock on the open market during 1993. Digitran Systems, Inc. is a corporation organized and incorporated under the laws of the State of Delaware, with its principal executive offices located in Logan, Utah. Digitran Systems is a holding company which conducts all of its activities through a wholly owned subsidiary, Digitran, Inc.[1] Digitran develops, manufactures and markets simulator training systems which are used by Digitran's customers to train their workers in the use of various types of heavy machinery, such as pedestal cranes for offshore drilling platforms. The individual defendants in this action are officers of Digitran who are either controlling persons within the meaning of § 20 of the Securities and Exchange Act of 1934 or who signed various 10–K and 10–Q reports filed with the Securities Exchange Commission during the time periods relevant to this action.

Digitran's net sales grew from a little over $1 million in 1988 to $4.4 million in 1991. In its Form 10–K report for the 1992 fiscal year, which was issued and became available as a public document on June 26, 1992, Digitran announced that "[t]he Company realized its third straight year of record revenues as net sales increased by 49% from $4,425,554 in 1991 to $6,611,535 in 1992." Plaintiffs contend that this statement was false, alleging that Digitran and its auditor, Grant Thorn-

---

1. Throughout the remainder of this Order, Digitran Systems, Inc. and Digitran, Inc. will be referred to simply as "Digitran."

ton, improperly recognized approximately $1.4 million in revenues during the 1992 fiscal year. These revenues resulted from agreements by two Canadian companies to purchase crane simulators from Digitran (the "Canadian Contracts"). Because the Canadian Contracts by their terms could be cancelled within six months by the Canadian companies, plaintiffs contend that the revenues related to those contracts should not have been recognized during the 1992 fiscal year. Plaintiffs also allege that Digitran improperly included capitalized simulator development costs as an asset on its 1990–1992 fiscal year balance sheets, resulting in overstatement of Digitran's assets of $2.8 million, $3.2 million, and $3.6 million, respectively, as well as overstatement of annual net income.

On May 14, 1993, Digitran announced to the public that the Canadian Contracts contained cancellation provisions. From that date until May 21, 1993, when the SEC suspended trading in Digitran's stock, the value of Digitran's stock plummeted 32%. At the same time, the SEC began an investigation into Digitran's affairs, questioning whether Digitran had properly reported revenues in its 1992 and 1993 financial statements. Grant Thornton withdrew its opinion with respect to Digitran's financial statements. Trading of Digitran's securities has not resumed as of the date of this Order.

## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Plaintiffs have moved the Court to certify a class consisting of:

[A]ll purchasers of Digitran Systems, Inc. ("Digitran") securities during the period from March 19, 1992 to May 21, 1993, inclusive. Excluded from the class are defendants, their family members, any entities in which any defendant has a controlling interest or which is a parent or subsidiary of or is controlled by Digitran, and the officers, directors, affiliates, legal representatives, heirs, predecessors, successors and assigns of any of the defendants. Also excluded from the class are persons who sold during the class period all of the Digitran securities which they purchased during the class period.[2]

Plaintiffs argue that they have met the requirements for class certification under Rule 23 and that the class action device is a useful, necessary, and effective tool for dealing with securities litigation. In attempting to establish the predominance requirement of Rule 23(b)(3), plaintiffs have utilized the fraud-on-the-market theory to show common reliance.

Defendants Digitran, Inc. and Digitran Systems, Inc., Donald G. Gallent, Loretta P. Gallent, Chris S. Coray, Harris G. Leroy, II, and James R. Bryan (collectively the "Digitran Defendants") oppose plaintiffs' motion for certification, arguing that plaintiffs may not rely upon the fraud-on-the-market theory because they cannot establish the "effect upon price" element of that theory. Alternatively, the Digitran Defendants argue that they have proffered evidence sufficient to rebut the presumption of common reliance arising from the fraud-on-the-market theory, and that the burden now shifts back to plaintiffs. In this regard, the Digitran Defendants proffered a chart showing Digitran's common and preferred stock prices during all relevant times of this action. Because stock prices remained flat during the time period immediately following Digitran's allegedly misleading announcement of the contracts in question, and because the market efficiently reflected all material information, the Digitran Defendants contend that the alleged misrepresentations had no effect upon the market price. Without a change in the market price of Digitran's securities, the Digitran Defendants contend that plaintiffs can neither establish the necessary elements of the fraud-on-the-market theory nor satisfy Rule 23(b)(3)'s requirement of predominance. Accordingly, the Digitran Defendants argue that plaintiffs' motion for class certification should be denied.

The Digitran Defendants also assert that plaintiffs' motion for class certification pursuant to state law should be denied, arguing

2. [Proposed] Order Directing Class Notice Procedures and Approving Forms of Class Notice attached as Exhibit "D" to Plaintiffs' Motion for Entry of Class Certification Order and For and Order Directing Class Certification.

that because the Utah Supreme Court has not accepted the fraud-on-the-market theory, plaintiffs cannot rely on such theory to establish the requirement of predominance.

Defendant Grant Thornton does not contest plaintiffs' proposed class certification with respect to Digitran's common shareholders. However, Grant Thornton contends that Digitran's preferred shareholders, at least those who purchased their preferred shares at the initial public offering, should be excluded from the class because they did not rely on the audited financial statements for the 1992 fiscal year, but rather on the June 25, 1992 prospectus which contained unaudited financial statements for the third quarter of the 1992 fiscal year and audited statements for the 1991 fiscal year. Because the preferred shareholders relied on different information than the common shareholders in making their investment decisions, Grant Thornton contends that plaintiffs' claims are not typical of those of the preferred shareholders and therefore plaintiffs cannot adequately protect the preferred shareholders' interests in accordance with Rule 23(a). Grant Thornton also argues that the preferred shareholders cannot be said to have relied on the integrity of the market price since they purchased their preferred shares directly from Digitran at a price solely within Digitran's discretion. Therefore, Grant Thornton argues that plaintiffs cannot use the fraud-on-the-market theory to establish predominance with respect to the preferred shareholders. Plaintiffs respond that all preferred shareholders, even those who purchased at the initial public offering, relied upon the integrity of the market price of Digitran's common stock in deciding whether to purchase the preferred shares. In support of this argument, plaintiffs note that the preferred shares were convertible into common stock and therefore the value of the preferred shares was contingent upon that of the common shares. Additionally, because the audited financial statements for fiscal year 1992 were issued only one day after the June 25, 1992 prospectus was certified for circulation by the SEC, plaintiffs contend

that the preferred shareholders likewise should be presumed to have relied upon the integrity of the market price.

## GRANT THORNTON'S MOTION FOR BIFURCATION OR ALTERNATIVELY FOR EARLY CLAIMS SUBMISSION

Defendant Grant Thornton has moved the Court to bifurcate this action into two phases. The first phase would determine all liability issues, assess the "true value" of Digitran's securities during the class period, and determine whether the securities were traded in an efficient market. The second phase envisions proofs of claim to be submitted by class members for determination of actual damages suffered by class members. Grant Thornton and the other defendants would be afforded the opportunity to rebut the presumption of reliance arising from the fraud-on-the-market theory. Alternatively, Grant Thornton moves the Court to require submission of proofs of claim before trial, so that Grant Thornton and the other defendants can utilize information collected therefrom to rebut the presumption of reliance arising from the fraud-on-the-market theory. The Digitran Defendants joined in the alternative motion.[3]

Plaintiffs oppose Grant Thornton's motion, arguing that bifurcation at this stage of the proceeding would be unnecessary and premature in that plaintiffs have not even communicated their theory of damages to defendants.

### ANALYSIS

## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

 Plaintiffs may represent the interest of all holders of Digitran securities only if they meet the prerequisites set forth in F.R.C.P. 23(a) and the additional requirement of F.R.C.P. 23(b)(3) that questions of law and fact common to members of the proposed class predominate over questions affecting individual members. *Esplin v. Hirschi*, 402 F.2d 94, 98 (10th Cir.1968), *cert.*

---

3. For the sake of simplicity throughout the remainder of this order, the Court will refer only to Grant Thornton when addressing the alternative

part of Grant Thornton's motion, although it is understood that the Digitran Defendants have joined in that part of the motion.

*denied* 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969). The Court should determine whether the action will proceed as a class action "[a]s soon as is practicable after the commencement of [the action]." F.R.C.P. 23(c). In making this determination, the Court is not required to be infallible. Rather, the Court should analyze the allegations of the complaint and the other materials before it, consider the nature and range of proof necessary to establish those allegations, the future course of the litigation, and the factors noted in Rule 23(b)(3), and then make its determination. In determining whether to certify a class, the Court should neither conditionally certify based upon the mere possibility that the plaintiff later may meet Rule 23's requirements, nor pass judgment on the merits of the suit. Nevertheless, the Court should engage in a rigorous analysis of the particular facts. *See General Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 2372–73, 72 L.Ed.2d 740 (1982); *Eisen v. Carlisle & Jacqueline,* 417 U.S. 156, 177, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974); *Blackie v. Barrack,* 524 F.2d 891 (9th Cir.1975). Where the question of class certification is a close one, there is a presumption in favor of certifying the class. *Esplin v. Hirschi, supra.*[4] Rule 23(c) specifically provides for alteration or amendment of an initial determination of class certification before a decision on the merits of the action is rendered.

**Satisfaction of Class Action Prerequisites**

*Numerosity*

■ The numerosity requirement of Rule 23 is satisfied in a securities fraud case if the stock at issue is nationally traded. *Zeidman v. J. Ray McDermott & Co.,* 651 F.2d 1030, 1039 (5th Cir.1981). During the relevant time period, Digitran was nationally traded and over two million shares of common stock were outstanding as of April 1992. Based upon the foregoing, and there being no dispute between the parties as to satisfaction of the numerosity requirement, the Court finds that the class is so numerous

that joinder of all members would be impracticable.

*Common questions of law and fact*

■ It is also clear to the Court that the commonality prerequisite (issues of law or fact common to the class) has been met. All claims asserted in this action, both by the named parties and the class members they purport to represent, arise out of specific misrepresentations and omissions allegedly made by defendants in Digitran's financial statements. Notwithstanding the fact that class members may have different individual situations and circumstances, all of their claims arise out of a common nucleus of operative facts. *Milonas v. Williams,* 691 F.2d 931 (10th Cir.1982), *cert. denied* 460 U.S. 1069, 103 S.Ct. 1524, 75 L.Ed.2d 947; *Penn v. San Juan Hospital, Inc.,* 528 F.2d 1181 (10th Cir.1975). Therefore, the Court finds that the prerequisite of commonality has been met.

*Typicality*

■ The Tenth Circuit Court of Appeals has recognized that class certification is appropriate under the typicality standard notwithstanding differences among the situations of individual class members "so long as the claims of the plaintiff and the other class members are based on the same legal and remedial theory." *Penn v. San Juan Hospital,* 528 F.2d 1181, 1189 (10th Cir.1975). As noted above, all claims asserted in this action, both by the named plaintiffs and the class members they purport to represent, arise out of the defendants' alleged improper recognition of revenue from cancelable contracts and improper capitalization of simulator development costs. The claims of plaintiffs and the putative class members arise from a virtually identical set of operative facts, and they share the same legal and remedial theory. Accordingly, the typicality requirement has been satisfied.

---

4. The court in *Esplin* determined that the interests of justice require that in a doubtful case any error, if there is to be one, should be committed in favor of allowing class action. *Esplin,* 402 F.2d at 101.

*Adequate Representation*

 Whether plaintiffs will fairly and adequately protect the interests of the class is determined by assessing two factors: (1) whether plaintiffs' attorneys are sufficiently competent to conduct the proposed litigation and (2) whether plaintiffs have interests which are antagonistic to those of the class. *Lerwill v. Inflight Motion Pictures, Inc.,* 582 F.2d 507, 512 (9th Cir.1978). The parties do not dispute and this Court does not doubt the competency of plaintiffs' attorneys; they are experienced in securities class litigation. However, as to the second element, Grant Thornton has disputed plaintiffs' ability to fairly and adequately protect the interests of preferred shareholders who purchased their preferred shares pursuant to a self-underwritten offering by Digitran in July 1992.[5] Those preferred shareholders, Grant Thornton argues, could not have relied upon the market price since the price of the preferred shares was set at the sole discretion of Digitran. In this regard, Grant Thornton contends that preferred shareholders must have relied upon the June 25, 1992 offering memorandum, which did not contain audited financial statements for the 1992 fiscal year. Because the plaintiffs purchased on the open market rather than in reliance upon the June 25, 1992 offering memorandum, Grant Thornton argues that plaintiffs do not have the same interest in vigorously attacking the June 25, 1992 offering memorandum, and thus will not fairly and adequately protect the preferred shareholders' interests in the proposed litigation. Grant Thornton also questions whether a class containing preferred shareholders can meet the commonality, typicality, and predominance requirements for class certification as well.

While Grant Thornton's argument is persuasive on its face, it assumes too much. There is no evidence that the preferred shareholders in question relied solely on the June 25, 1992 offering memorandum in purchasing their shares. Moreover, there is no allegation that the June 25, 1992 offering memorandum contained any flaw with respect to improper recognition of revenue on the Canadian Contracts.[6] On the other hand, there is evidence that the preferred shareholders relied upon the market price of Digitran common stock notwithstanding the fact that the price of the preferred stock was set at the sole discretion of Digitran. The preferred shares were convertible into common stock. Therefore, what an investor was willing to pay for such shares depended upon the value of the common stock plus some premium for the additional privileges granted to preferred shareholders. That the value of the two different classes of stock was linked cannot be disputed. The chart proffered by the Digitran Defendants indicates that the prices of the two securities moved virtually in tandem in accordance with fluctuations in the market. *See* Digitran Defendants' Opposing Memorandum, Exhibit "A1." Therefore, it appears to this Court that plaintiff common stockholders and the preferred shareholders have a common interest in proving that a fraud on the market resulted from the alleged improper recognition of revenue from cancelable contracts and improper capitalization of simulator development costs.

Plaintiffs proffer the additional argument that Digitran's 1992 audited statements must have been considered alongside the June 25, 1992 prospectus by the preferred shareholders since the 1992 audited statements were issued only one day after the June 25, 1992 prospectus was certified for circulation by the SEC. While this may be true, it does not necessarily follow that the preferred shareholders relied upon the market price. Nevertheless, because the Court has found that Digitran's securities were traded in an efficient market, it may be inferred that the preferred shareholders relied upon the market price in determining whether to purchase preferred stock, and that the market price

---

**5.** Grant Thornton acknowledged at the hearing that its objection would not apply to preferred shareholders who purchased their preferred shares on the open market.

**6.** The June 25, 1992 offering memorandum must have contained what plaintiffs allege was a mis-

representation of the capitalization of simulator development costs, which overstated Digitran's assets and net income. So far as this alleged misrepresentation is concerned, plaintiffs' interests and those of the preferred shareholders appear to be similarly aligned.

they considered reflected the information contained in the 1992 audited statements.

Were it not for the fact that the preferred shares were convertible into common stock, it would be more difficult for plaintiffs to argue that the preferred shareholders in question relied upon the integrity of the market price of the common stock in making their decision to purchase preferred stock. Still, even under those circumstances it would be difficult to conceive of an investor who would not look to the market price of the common stock in determining whether to purchase preferred stock. *Basic, Inc. v. Levinson*, 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988).[7] Since the preferred shares were convertible into common shares, it appears clear to the Court that a reasonable investor would have considered the market price of the common stock in determining whether to purchase Digitran preferred stock, and that the market price of the common stock reflected the alleged material misstatements contained in the 1992 audited financial statements at the time investors considered whether to purchase the preferred stock. These determinations are subject to revision as justice may require in the light of further evidence, but at this point the Court finds that the preferred shareholders are properly included in the class. The Court orders, however, that plaintiffs amend their Complaint to add class representatives who purchased preferred shares at the initial offering and not on the open market.

Based upon the foregoing and upon counsel's representation to the Court that plaintiffs have been apprised of and are willing to assume their responsibilities to represent the entire class, the Court finds that plaintiffs and others to be added will fairly and adequately protect the interests of the class as presently defined.

**The Predominance Requirement**

Having determined that plaintiffs meet the prerequisites for class certification under Rule 23(a), the Court must now determine

under F.R.C.P. 23(b) whether the questions of law or fact common to the members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. To satisfy the predominance requirement, plaintiffs have employed the fraud-on-the-market theory, which allows a rebuttable presumption of common reliance on the market price. If plaintiffs cannot meet their burden in establishing this theory, their motion for class certification must fail because questions of individual reliance would predominate over any other questions of law or fact. This would be true notwithstanding the Court's previous finding that there are issues of law and fact common to the class.

█ The Tenth Circuit Court of Appeals approved the fraud-on-the-market theory in *T.J. Raney & Sons v. Fort Cobb, Okl. Irr. Fuel,* 717 F.2d 1330 (10th Cir.1983). The court explained:

> The [fraud-on-the-market] theory is grounded on the assumption that the market price reflects all known material information. Material misinformation will theoretically cause the artificial inflation or deflation of the stock price. At its simplest *the theory requires only that a plaintiff prove purchase of a security and that a material misrepresentation was made concerning the security by the defendant which resulted in an artificial change in price.*"

*Id.* at 1332 (emphasis added). Thus, in order to establish the predominance requirement under the fraud-on-the-market theory, plaintiffs must show that: (1) the market in which Digitran securities were traded was efficient; (2) the plaintiffs purchased Digitran securities; (3) a material misrepresentation or omission was made by the defendants concerning such securities; and (4) such misrepresentation or omission artificially affected the price of those securities.

---

7. The court said in *Basic* that it is hard to imagine that there ever is a buyer or seller who does not rely on market integrity. *Basic,* 485 U.S. at 246–47, 108 S.Ct. at 991–92. *See also In re Badger Mountain Irr. Dist. Sec. Lit.,* 143 F.R.D.

693, 699 (W.D.Wash.1992) (So long as same course of conduct by defendants allegedly caused all of the plaintiffs' injuries, the requirement of typicality between public offering purchasers and aftermarket purchasers is satisfied).

■ The Digitran Defendants may rebut the presumption of reliance by showing that the misrepresentations or omissions "did not lead to a distortion of price or that an individual plaintiff traded or would have traded despite his knowing the statement was false." *Basic,* 485 U.S. at 248, 108 S.Ct. at 992.[8]

The Court will now address whether plaintiffs have satisfied their burden to prove the applicability of the fraud-on-the-market theory and whether the defendants have proffered evidence sufficient to rebut that burden.

### Efficiency of the market

The Digitran Defendants have admitted that "the shares of Digitran were traded actively in an efficient, open and well-informed market." Digitran Defendants' Opposing Memorandum at 1. Although Grant Thornton has not expressly so admitted, it has not opposed certification of a class consisting of Digitran's common stockholders based upon the fraud-on-the-market theory, thus impliedly acknowledging that Digitran's shares traded in an efficient market. In light of the fact that Digitran's shares were actively trading on the American Stock Exchange, and in the absence of any showing contrariwise from the defendants, the Court finds that Digitran's shares were traded in an efficient market. A necessary corollary to this finding is that the market price of Digitran common stock reflected all known material information at all times during the class period.

### Materiality

The Supreme Court has stated that "[m]ateriality depends on the significance the reasonable investor would place on the withheld or misrepresented information." *Basic,* 485 U.S. at 240, 108 S.Ct. at 988; *See also Affiliated Ute Citizens of Utah v. United States,* 406 U.S. 128, 153–54, 92 S.Ct. 1456, 1472–73, 31 L.Ed.2d 741 (1972) (materiality defined as

what reasonable investor would consider important in making decision). The misrepresentations and omissions asserted by plaintiffs resulted in alleged overstatement of Digitran's 1992 fiscal year revenues by $1.4 million and overstatement of Digitran's 1990–92 assets by $2.8 million, $3.2 million, and $3.6 million, respectively. It hardly can be disputed that these statements are material. Indeed, at oral argument the Digitran Defendants agreed that they did not dispute the materiality of the alleged misrepresentations. Because there is a substantial likelihood that reasonable investors would have considered the misrepresentations and omissions alleged by plaintiffs to be important in their purchase decision, the Court finds that such representations and omissions, if made, were material.

### Effect upon market price

The only issue vigorously disputed by the Digitran Defendants with respect to the prerequisite of commonality is whether the alleged misrepresentations and omissions resulted in an artificially inflated or deflated price for Digitran's securities. The Digitran Defendants assert that plaintiffs cannot show an effect on the market price of Digitran's securities since there was no "change in price" in Digitran's securities prices for at least six months after the alleged misrepresentations and omissions were made, citing *T.J. Raney,* 717 F.2d at 1332. As previously noted, the Digitran Defendants proffered a chart purporting to show the price of Digitran securities at all relevant times in this action.[9] Because there was no change in price immediately following public announcement of the Canadian Contracts, the Digitran Defendants argue that plaintiffs cannot establish this element of the fraud-on-the-market theory, and therefore are not entitled to a presumption of reliance. Alternatively, the Digitran Defendants argue that if the Court finds that plaintiffs have met their burden in

---

8. The Supreme Court further stated:
Any showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price, will be sufficient to rebut the presumption of reliance. *Basic,* 485 U.S. at 248, 108 S.Ct. at 992. The Court went on to list several examples of how

this link could be severed, such as plaintiff's being privy to the truth, plaintiff's willingness to purchase regardless of the market price, or purchasing for other unrelated reasons. *Id.* at 249, 108 S.Ct. at 992–93.

9. Digitran Defendants' Opposing Memorandum, Exhibit "A1."

establishing the presumption, the Digitran Defendants have rebutted plaintiffs' presumption of reliance by showing that the misrepresentations or omissions "did not lead to a distortion of price," and that the burden has shifted back to plaintiffs to prove predominance, citing *Basic,* 485 U.S. at 248, 108 S.Ct. at 992. In either case, the Digitran Defendants contend that plaintiffs have not met their burden in establishing the predominance requirement, and their motion for class certification must fail because questions of individual reliance predominate over any other questions of law or fact.

Plaintiffs have proffered the declaration of Candace L. Preston, an experienced securities analyst, who avers that "[t]he price of a security would remain constant in response to the release of information that is already known or expected by investors, or where material information is withheld from investors." [10]

Evidence before the Court at this point is to the effect that the market expected the additional fiscal 1992 revenues of $1.4 million, which could explain why there was no change in the price of Digitran's stock when the contracts in question were announced to the public. Manifestly, the market does not react to information that is already anticipated. Had Digitran announced that its revenues for the fiscal year 1992 would be much lower than forecasted, a downward adjustment in the price of Digitran's securities reasonably could have been expected. A similar result likely would have occurred if Digitran had reported that for the past three years that it had improperly included capitalized simulator development costs as an asset on its balance sheet. The point is that if plaintiffs' allegations are true, it clearly can be said that the market price was artificially *affected* or *inflated* by the misrepresentations and omissions notwithstanding the fact that the market price did not change after the

two contracts were announced towards the end of the 1992 fiscal year. [11]

At this stage of the proceeding, the Court cannot categorically determine whether the alleged misrepresentations and omissions had an effect upon market price, the SEC having issued a stop order in the trading of Digitran securities. However, the chart proffered by the defendants shows a dramatic decline in the price of Digitran securities immediately prior to the stop order, which was issued on May 21, 1994. While this decrease conceivably might be attributable to other factors, the Court finds that this 32% decline was likely the result of Digitran's announcement on May 14, 1993 that the Canadian Contracts contained cancellation provisions. Although the Digitran Defendants contend that there was no change in price on the dates the Canadian Contracts were announced, there can be no dispute that the price changed when their cancelability was announced. Moreover, there was no argument by the Digitran Defendants that the alleged overstatement of its assets and earnings due to improper capitalization of simulator development costs did not have an effect upon the market price. Since the market does not react to information which it expects, and because complicated questions of causation are better left until trial, the Court concludes that plaintiffs have satisfied their burden of proving an effect upon market price for purposes of establishing the applicability of the fraud-on-the-market theory.

Based upon what is presently before the Court, plaintiffs have sufficiently established that a material misrepresentation was made by the defendants concerning the Digitran securities which resulted in an artificial effect upon the market price. Plaintiffs therefore are entitled to rely upon the fraud-on-the-market theory in establishing the predominance requirement. Plaintiffs are entitled to

**10.** Declaration of Candace L. Preston at ¶ 7, attached as "Exhibit A" to Plaintiffs' Reply Memorandum.

**11.** The Tenth Circuit used the words "artificial *change* in price" in *T.J. Raney,* 717 F.2d at 1332 (emphasis added). However, while the word "change" was applicable to the facts and circum-

stances before the Tenth Circuit in *T.J. Raney,* that word results in too narrow an articulation of the fraud-on-the-market theory. The theory applies not just when a material misrepresentation or omission causes a change in price, but rather when a misrepresentation or omission has an artificial effect upon the price of the security.

a presumption of reliance, and the Digitran Defendants have failed to rebut the presumption. Furthermore, it appears to the Court that the questions common to the class will predominate over those affecting individual members. Accordingly, the Court finds that a class should be certified in accordance with this Order.

### Plaintiffs' State Securities Claims

Even though the Court has determined to certify a class on the basis of plaintiffs' federal claims, the Digitran Defendants contend that certification of a class is unwarranted on plaintiffs' state securities fraud claims because the Utah Supreme Court has not recognized the fraud-on-the-market theory as an appropriate means for establishing common reliance and hence Rule 23(b)(3)'s requirement of predominance. Digitran Defendants' Memorandum at 22–23. The Digitran Defendants argue that because the Utah Uniform Securities Act is similar to federal securities law, Utah courts look to federal law to interpret the Act. *See, e.g., Payable Accounting Corp. v. McKinley,* 667 P.2d 15, 17 (Utah 1983). The Digitran Defendants contend that federal law requires reliance as an element of every securities fraud claim, *see Basic,* 485 U.S. at 243, 108 S.Ct. at 989–90, and that the Utah statute contains an implicit requirement of reliance. It is further submitted that plaintiffs cannot show reliance because the Utah Supreme Court has not adopted or considered the fraud-on-the-market theory. Plaintiffs dispute the defendants' position, observing that the Utah statute does not state anywhere a requirement of establishing reliance in order to prevail on a fraud claim. In addition, plaintiffs cite several cases where the fraud-on-the-market theory has been applied to state securities claims within the Tenth Circuit. Plaintiffs' Reply Memorandum at 11 n. 14.

In the Court's view, it would be premature to rule upon certification of plaintiffs' state securities claims at this stage in the proceeding. In all events, the Court declines to certify plaintiffs' state securities fraud claims at this time.

### GRANT THORNTON'S MOTION FOR BIFURCATION OR ALTERNATIVELY FOR EARLY CLAIMS SUBMISSION

*Motion for Early Claims Submission*

■ Rule 23(c)(2) of the Federal Rules of Civil Procedure provides:

> In any class action maintained under subdivision (b)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice shall advise each member that (A) the court will exclude the member from the class if the member so requests by a specified date....

The presumption of Rule 23(c)(2) is that proposed class members are members of the class unless and until they "opt out." Grant Thornton proposes that this Court "require members of the plaintiff class ... to submit proofs of claim prior to trial or be precluded from recovery." Grant Thornton's Memorandum at 12. While it may be within the discretion of the Court to fashion a class notice or proof of claim form which might facilitate the defendants' efforts to rebut the presumption arising from the fraud-on-the-market theory, the Court is reluctant to do so based upon cases which have held that requiring class plaintiffs to file a proof of claim prior to trial or be excluded essentially amounts to an "opt in" action contrary to the express provisions of Rule 23(c)(2). *See, e.g., Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985).

As plaintiffs point out in their opposing memorandum, one of the reasons for prohibiting the sending of questionnaires with the class notice or the submission of proofs of claim prior to trial is that class members have little incentive to respond where no recovery fund has been established. The net result of such an approach is that plaintiff class members are excluded from the class before they have any notion of their potential for recovery. This type of taking advantage of class members' ignorance is repugnant to the class action vehicle. Accordingly, the Court determines that requiring class members to respond to a questionnaire which would accompany the class notice or to file

proofs of claim before trial is inappropriate at this stage of the proceeding.

*Motion for Bifurcation*

 As noted in the facts section above, Grant Thornton has moved the Court to bifurcate this action into two phases. The first phase would determine all liability issues, assess the "true value" of Digitran's securities during the class period, and determine whether the securities were traded in an efficient market. The second phase would employ proofs of claim submitted by class members to determine actual damages suffered by class members and allow Grant Thornton and the other defendants opportunity to rebut the presumption of reliance arising from the fraud-on-the-market theory. Plaintiffs oppose Grant Thornton's motion, arguing that a decision requiring bifurcation at this stage of the proceeding would be premature given that plaintiffs have not even communicated their theory of damages to defendants.

The Court denies the motion for bifurcation because it is not convinced at this stage of the proceeding that judicial economy would be served by bifurcation or that it would be practicable.

Based upon the foregoing, it is hereby

ORDERED that plaintiffs shall amend their Complaint within thirty (30) days after the date of this Order to add class representatives who purchased preferred shares at the initial offering and not on the open market. It is further

ORDERED that a plaintiff class shall be certified in accordance with the terms of this Order. The plaintiffs shall file with the Court a proposed order of certification after having it approved as to form by the defendants. It is also

ORDERED that Grant Thornton's Motion to Bifurcate Action, or in the Alternative, to Require Class Members to Submit Proofs of Claim is DENIED. It is further

ORDERED that counsel for plaintiffs shall submit to the court within 30 days of the date of this Order a copy of any existing employment agreement relating to this case which describes the basis for compensation of attorney's fees, and payment of costs. Counsel shall also submit a schedule of hourly charges, and a statement of charges which have been incurred to year end 1994, an estimate of further time required to complete the case, and a proposed description of how attorneys fees, costs and expenses will be paid and how such payment might affect the class. The court should be assured that a system is in place to prevent duplication and overlapping fees and costs, and that counsel recognizes that the court will set the fees and relative matters without being bound by any existing arrangement for contingency or payment of hourly rates.